R. KNIGHT & Co. v. THE SOUTHERN PACIFIC RAILROAD Co.

1. SPECIAL ISSUES.—Only such should be submitted to the jury as arise out of the pleadings, and upon which the judgment of the court depends; and the jury should have such instructions upon them as may be appropriate and necessary to aid them in reaching their conclusion.

2. OVERCHARGE FOR FREIGHT BY RAILROAD COMPANY.—The rate for freight to which the Southern Pacific Railroad Company is limited by its charter has no reference to any road except that which the company is authorized to build and operate in Texas; and a charge of freight, in excess of the limits prescribed by its charter, over a road which. the company owns and operates out of Texas, would be no violation of the provisions of its charter.

3. LIMIT OF EFFECT OF STATUTE ON CHARGES BY RAILROAD.—A charge for freight from Shreveport, La., to the Texas line, in excess of the limits of the charter of the Southern Pacific Railroad Company, is not a violation of such charter, nor does an action arise from such overcharge.

APPEAL from Harrison. Tried below before the Hon. J. B. Williamson.

Knight & Co., in 1870, brought two suits against the Southern Pacific Railroad Company in the District Court of Harrison county. One was to recover of the company ten dollars upon each of about ninety separate shipments of freight for appellant by said company, and on their road from Shreveport, Louisiana, to Marshall, Texas, under the provisions of the 9th section of the act of February 9th, 1860, amending the general railroad law of the State, (Pas. Dig., art. 4929,) alleging an overcharge by said company

upon each of the shipments, and a forfeiture to appellant by the company, under the provisions of said act; also alleging that the company, by the provisions of its charter, was and is authorized to charge as freight for shipment over their road not more than fifty cents per hundred pounds for freight for every hundred miles the same may be carried. The 13th section of the charter of said company, as amended February 16th, 1872, is as follows, viz: "Sec. 13. Said company shall have the right to demand and receive such rates and prices for the transportation of passengers and freight as they may think proper to establish, not to exceed five cents per mile for passengers and fifty cents per hundred pounds for freight for every hundred miles the same may be carried;" alleging the distance from Shreveport to Marshall to be not more than 42 miles. Defendant answered; plea to the jurisdiction of the court; general demurrer; general denial; and that said company was authorized to make charges in gold, but the same were made and collected in currency, and computing the premium on gold there was no overcharge; that said company never contracted to transport freight over their road in Texas except by bill of lading made and signed at Shreveport, Louisiana; that said bills of lading did not specify what rate of freight was charged in Louisiana and what in Texas; that the road in Louisiana was owned and operated by virtue of the laws of that State, and was named and called the "Southern Pacific Railroad Company;" and being of the same gauge and connecting with defendant's road at the State line, the two roads were run by the two companies for their mutual benefit; that contracts for shipment were made in Louisiana, and controlled by the laws of that State; that by the laws of that State said companies were authorized to make reasonable charges for transportation, &c., and that said charges were reasonable; that the provisions of the said 13th section of the said charter was not intended to and does not apply to

and become binding upon defendant until one hundred miles of their road be built in Texas, and that the same does not apply to freight carried by defendant on their said road from station to station.

The other suit was brought by appellant to recover the excess charged and collected by defendant upon some shipment over the amount which they could collect by the terms of their charter, said excess amounting to about seven hundred dollars; to which defendant answered as in former suit. The two causes were consolidated at the October term, 1872, and were tried about the 29th October, 1872.

Special issues were submitted to the jury, which, and the the responses by the jury, are as follows:

1. " Did the defendant convey for the plaintiffs certain goods from Shreveport to Marshall ? "

1st. " We, the jury, find that the defendant did convey for plaintiffs certain goods from Shreveport to Marshall."

2. "Was there any express contract or agreement for the conveyance of said goods, and if so, where was said contract made ? "

2d. " That there was an express contract made for the shipment of said goods, and the contract was made in Shreveport, Louisiana."

3. "What amount did said defendant charge for the conveyance of said goods from Shreveport to Marshall; that is, by the hundred pounds?"

3d. " That said defendant charged said plaintiffs fifty cents per 100 lbs. from Shreveport, Louisiana, to Marshall, Texas."

4. "What amount did said defendant charge per 100 lbs. for conveying said goods from Shreveport to the State line ?"

4th. " That the defendant charged the plaintiffs forty-five cents per 100 pounds from Shreveport, Louisiana, to Markham's, on the State line."

5. "What amount did said defendant charge per 100 lbs. for conveying said goods from the State line to Marshall ? "

5th. "That the defendant charged five cents per 100 lbs. from Markham's, on the State line, to Marshall."

6. "Did said defendant charge more or less than at the rate of fifty cents per 100 lbs. for 100 miles for transporting said freight ? "

6th. "That said defendant did charge plaintiffs more than fifty cents per 100 lbs. per 100 miles on said goods."

7. "If you find that defendant charged more than at the rate of fifty cents per 100 lbs. for the 100 miles, then you will make a careful calculation from the evidence before you, and determine how much more the defendant has charged the plaintiffs on the various shipments than he was entitled to."

7th. "That the defendant charged the plaintiff for each separate shipment twenty-nine cents per 100 lbs. more than at the rate of fifty cents per 100 lbs. per 100 miles, aggregating upon all the shipments the sum of $648.40."

8. "Upon how many different shipments, if any, has the defendant charged the plaintiffs more than at the rate of fifty cents per 100 lbs. for 100 miles? The above instructions do not refer to parcels or packages of less than 200 lbs."

8th. "That there were ninety different shipments made by defendant for plaintiffs, on which there was an overcharge, viz, the charge was at the rate of more than fifty cents per 100 lbs. per 100 miles."

9. "Did defendant convey for plaintiffs from the State line any parcels or packages of less than 200 lbs., and if so, did the defendant charge upon any of these more than he would have been entitled to charge had such package or packages weighed 200 lbs. each, at the rate of 50 cents per 100 lbs. for the 100 miles ? "

9th. "That the defendant did convey packages from

the State line to Marshall of less than 200 lbs. weight; but the defendant did not charge more than at the rate of 50 cents per 100 lbs. per 100 miles for said packages."

10. " Upon how many packages, if any, has the defendant charged at a rate higher than above stated ? "

10th. " There were 90 packages conveyed by defendant to plaintiffs upon which there were charged greater than at the rate of 50 cents per 100 lbs. per 100 miles."

11. " How much has defendant charged, if anything, on packages above the rate as before stated ? "

11th. " That the defendant has not charged on packages anything above the rate as before stated."

12. " What is the distance from Shreveport to Marshall?"

12th. "That the distance from Shreveport, Louisiana, to Marshall, Texas, is 42 miles."

13. " What is the distance from Shreveport to the State line?"

13th. " That the distance from Shreveport, La., to the State line is 21 miles."

14. " What is the distance from the State line to Marshall?"

14th. " That the distance from the State line to Marshall is 21 miles."

15. " Was the freight collected from said plaintiffs in specie or United States currency?"

15th. " That the freight collected for shipment as aforesaid was in United States currency."

16. " How much was specie, at the time the collection was made, worth more than United States currency ?"

16th. " That at the time said freight was paid by plaintiffs to defendant, a specie dollar was worth 130 cents in United States currency."

At instance of the plaintiffs, the following issues were submitted :

17. " If you find the railroad company transported the freight in plaintiffs' petition set out, or as contained in the

receipts or bills of freight for plaintiffs, then find from what point to what place or point was the freight transported."

17th. " That the freight transported by defendant for plaintiffs as aforesaid was transported from Shreveport, Louisiana, to Marshall, Texas."

18. " Find also whether said railroad company charged on through freight any more or higher rate on any particular section of their road than on any other particular section, and if so, on what section or part of the road did said company so charge higher rates."

18th. " That on through freight the railroad officers made no difference in freight charges on one part of the road over or under any other part."

At request of the defendant—

19. " Were any shipments of goods made by defendant for plaintiffs from the State line to Marshall ?"

19th. " That there were no shipments of goods made by defendant for plaintiffs from the State line to Marshall."

20. " Were any shipments of goods made by defendant for plaintiffs except from Shreveport to Marshall ?"

20th. " That there were no shipments of goods made by defendants for plaintiffs except from Shreveport to Marshall."

21. " What is the name of the railroad from the State line to Shreveport ?"

21st. " That we cannot say what the name of the railroad from Shreveport to the State line was."

22. " From whom or what authority did the charter for the road from the State line to Shreveport emanate, and under what laws of the State was it granted ?"

22d. " That the railroad from the Texas State line to Shreveport was chartered by authority of the legislature of the State of Louisiana."

23. " Under what charter is said road operated?"

23d. " That said road is operated under a Louisiana charter."

24. "Under what charter is the road from the State line to Marshall operated?"

24th. "That the road from the State line to Marshall is operated under a charter granted from the State of Texas."

25. "Where were the goods mentioned in the plaintiffs' petition shipped on the railroad and to what point?"

25th. "That the goods mentioned in the plaintiffs' petition were shipped from Shreveport to Marshall."

26. "When the goods were shipped, did the railroad execute receipts or bills of lading to the plaintiffs or the agent at the time of shipment?"

26th. "That the railroad did execute receipts or bills of lading to plaintiffs or agent at the time of shipment."

27. "Where does the Southern Pacific Railroad in Texas commence, and where does it run?"

27th. "That the Southern Pacific Railroad commences at the State line, and runs west into said State."

28. "What was the length of the railroad from Shreveport at the time the goods in question were shipped? What was its length from the State line at that time?"

28th. "That the length of the road at the time said goods were shipped was forty-two miles, and twenty-one miles long from the State line."

29. "Where was the domicile of the Southern Pacific Railroad Co. at the time of the shipment of said goods?"

29th. "That the domicile of the company at the time of the shipment of said goods was at Marshall."

Upon the verdict judgment was rendered for the defendant. A motion for new trial was overruled, and plaintiffs appealed. There is no statement of facts.

*H. McKay*, for appellants.

*Wm. Steadman*, for appellee.

MOORE, ASSOCIATE JUSTICE.—An inspection of the transcript of the record in this case constrains us to say

that the practice indulged in on its trial in the District Court, if not absolutely improper and irregular, by no means commends itself to our favorable consideration, as calculated to secure a full and fair presentation and eluci- dation of either the questions of law or fact upon which it should be determined. For instance, the exceptions of the defendant, the appellee in this court, to the plaintiffs' petition were neither abandoned nor acted upon by the court before the issues of fact were submitted to the jury. Their consideration was postponed until after the verdict. But whether they had any influence on the mind of the court in rendering judgment against appellants cannot be determined from the record. No instructions whatever on the law of the case were given the jury. Instead of this, twenty-nine distinct issues, some at the instance of the court and others at that of the parties were submitted to them. For the proper determination of some of them, at least, a charge upon the law in respect to the matter involved would have been as useful to the jury as if they had been required to return a general verdict upon the issues joined by the parties in their pleading. We are not to be under- stood by these remarks as by any means censuring the submission of special issues to the jury in a proper man- ner and in proper cases. But when it is done, the issues should be such only as arise out of the pleadings in the case, and upon which the judgment to be rendered should depend. And the jury should have such instruction upon them as may be appropriate and necessary to enlighten and aid them in reaching their conclusion.

But whatever may be our opinion on these and other matters of like character which might be noted, they are not presented by the record in a way that appellants can complain of them, for it appears that they either assented to or acquiesced in the action of the court in respect to them. Certainly, if they did not in all instances consent to the course pursued, the record furnishes us with no

evidence of their dissatisfaction at the time it should have been made known. And this fact is a complete answer to all the assignments of error, except those complaining of the judgment rendered by the court upon the verdict returned by the jury, by their answers to the issues submitted to them, and in which they, in effect, insist that the judgment should have been for them instead of the appellee. In this proposition, however, we are unable to agree with them.

The issues submitted to the jury, as we have already intimated, were, in our opinion, unnecessarily prolix, and the answers somewhat calculated to confuse the mind as to the correct conclusion to be deduced from them when viewed as a whole. On a superficial examination, they certainly produce the impression that there is some confusion, if not a direct conflict or contradiction, in the answers to some of the questions. But a careful consideration of the answers, in connection with the questions, will, we think, mainly, if not entirely, harmonize them with each other. At least, when this is done, there will be found no reasonable ground to say that judgment should have been given upon them for the appellants, or that they do not fully warrant the judgment of the court in favor of the appellee.

The suit of appellants is against appellee, a body corporate, under and by virtue of a charter from the State of Texas. It is clearly inferable from the petition, if not distinctly admitted in it, that the road of appellee, by virtue of its corporate existence under the laws of Texas, extends only to the line between this State and the State of Louisiana. This is directly averred in the answer of appellee, and is, indeed, an unavoidable legal conclusion. The damages claimed are for alleged charges by appellee for freight over its road from Shreveport, Louisiana, to Marshall, Texas, in excess of the rates allowed by its charter. This allegation must unquestionably be understood

to refer to the charter of appellee by which it has its cor-
porate existence in Texas, and would therefore seem to
be referable in its legal effect exclusively to an excessive
charge for freights over its road in Texas.   But if we were
to give it a broader interpretation, surely the most liberal
construction in favor of appellants of the averments of the
petition would be that it is in effect alleged, while the ap-
pellee's road, as the Southern Pacific Railroad of Texas, is
constructed and operated under its Texas charter from the
State line to Marshall, yet, by some provision in its charter,
it has become the owner of a road created and operated in
Louisiana, under the laws of that State, connecting with ap-
pellee's road in Texas at the State line, and thereby appellee
was authorized to and did contract with appellants to trans-
port freight from Shreveport, in Louisiana, to Marshall, in
Texas.   Grant this.   The rates for freight to which appellee
is limited by its charter certainly can have no direct ref-
erence to any road except that which the company is au-
thorized to build and operate in Texas.   If so, there could
be no violation of the provision of its charter by reason of
the rates of freight charged over a road which it may own
or operate out of Texas being in excess of those prescribed
in its charter from this State.   Certainly this must be so,
unless there is a condition and stipulation in its charter
that it will not charge a greater rate of freight on any road
it may control out of the State than that to which it is lim-
ited within it.   But no such averment as this is made in
the petition.   The responses of the jury authorize no such
conclusion, and appellee's answers clearly negative such
supposition.   It is alleged in the answer that, although the
roads from Shreveport to the State line and from there to
Marshall are controlled by the same individuals, yet they
are separate and distinct corporations—the road in Lou-
isiana having been constructed by a body corporate, organ-
ized under the laws of that State, and is operated solely
under and by virtue of authority conferred by them, while

the Southern Pacific railroad, the defendant in this suit, is limited in its corporate existence and operations to the State of Texas.

It has been held that even when corporations of this character are created under charters from different States, and though by law the stock of one is authorized to be consolidated with that of the other, this does not constitute the corporation one corporation of both States, or either, but each continues a corporation of the State of its creation, although both corporations are managed by one board of directors as one body. (The Racine and Mississippi Railroad Co. *v.* The Farmers' Loan and Trust Co., 4 G. Ill., 331.) If this is correct, it certainly negatives the right to hold appellee responsible in this action for excessive freights on the road in Louisiana, if this had been averred and proved. It is not to be inferred from this, however, if a contract was made with appellee directly or with the Louisiana company, its agent, directly authorized to do this, or with implied authority from the general course of business in signing through bills of lading over both roads, and appellee had thereby received more than its legal rate of freights over its road in Texas, that it might not be held responsible on proper averment· and proof of these facts.

In response to the issues submitted to them, the jury found that appellee charged appellant on his freight from Shreveport, Louisiana, to the State line forty-five cents per hundred pounds, and from there to Marshall five cents per hundred pounds. This was not in excess of the rates admitted to be allowed on appellee's charter over its road in Texas, as the jury found that the distance from the State line to Marshall was twenty-one miles. They also found, as alleged by appellee, that the road in Louisiana to the State line was organized by the authority of the State of Louisiana, and operated under a Louisiana charter; that the road from the State line to Marshall was operated

under the charter granted by the State of Texas, and that the Southern Pacific railroad commences at the State line and runs into Texas.

The verdict of the jury on these issues, in view of the ground upon which appellant brought his suit, are, we think, amply sufficient to warrant the judgment of the court in favor of appellee. It is therefore unnecessary for us to consider other grounds upon which counsel insist, with great confidence and force of reasoning, that the judgment should also be held correct.

There is no error in the judgment of the court disclosed in the record upon which this court can act, and it is therefore affirmed.

AFFIRMED.