### R. L. BROWN v. D. G. LEATH.

Decided November 17, 1897.

**1. Lease—Foreclosure—Tenant's Right to Crops.**

A lease of mortgaged lands by the owner severs the right to the rents from the realty, and the sale of the land under the mortgage during the term does not carry the title to the rents or the crop standing on the premises at the date of the sale, whether mature or not.

**2. Damages—Loss of Employment for Children—Other Occupation.**

When the unlawful levy of a sequestration on growing crops damages their owner by depriving him of profitable occupation for his children, he is not bound to reduce such damages by seeking other occupation for them away from home.

**3. Same—Double Damages.**

When damages for unlawful sequestration of crops are estimated on the basis of value of gathered crops, an allowance for loss of profitable occupation in gathering them permits double damages, and is erroneous.

APPEAL from Hays. Tried below before Hon. H. TEICHMUELLER.

Brown, who had bought the premises at foreclosure sale during the term of Leath's lease from the mortgagor, sued for and sequestered the crops. Defendant had judgment for damages, and plaintiff appealed.

*Will G. Barber,* for appellant.—1. Crops growing on land pass under foreclosure sale to the purchaser as against the mortgagor and those holding under him, especially if such crops are unmatured at time of sale. 2 Jones on Mort., sec. 1658; Wiltsie on Mort. Foreclosures, sec. 587; 1 Washb. Real. Prop., 5 ed., p. 144; Boone on Mort., sec. 101; 2 Pingrey on Mort., sec. 1979; Thomas on Mort., 51; Lane v. King, 8 Wend., 584; Richards v. Knight, 78 Iowa, 69; Land Co. v. Barwick, 50 Kan., 57; Bear v. Bitzer, 16 Pa. St., 178.

2. The use and occupation of Brown's land by Leath rendered the latter liable for the value of such use and occupation. Hearn v. Camp, 18 Texas, 546; Patrick v. Roach, 27 Texas, 580; Pace v. Potter, 20 S. W.

Rep., 928; same case, 22 S. W. Rep., 300; Cattle Co. v. Vaught, 20 S. W. Rep., 855; Lazarus v. Phelps, 152 U. S., 81.

3. To hold a person liable for an injury, it must appear that it was the natural and probable consequence of the wrongful act, and that it ought to have been foreseen in the light of attending circumstances. Railway v. Bigham, 38 S. W. Rep., 163; Railway v. Kellogg, 94 U. S., 469.

4. A person injured by another's tort must make reasonable exertions to render the injury as light as possible, and for any injury which he could have so avoided no recovery can be had, and he must allege that he could not have avoided such injury. Fowler v. Waller, 25 Texas, 696; Abernathy v. Hewlett, 2 Willson's C. C., sec. 805; Simon v. Allen, 76 Texas, 398; Banana Co. v. Wolfe, 22 S. W. Rep., 269; Railway v. Becht, 21 S. W. Rep., 971; Allen v. Maronne (Tenn.), 23 S. W. Rep., 113; Hunt v. Crane, 33 Miss., 669; McDaniel v. Parks, 19 Ark., 671; 2 Wait's Act. and Def., 456, sec. 3; 1 Suth. on Dam., 2 ed., secs. 88-91.

. 5. The court erred in instructing the jury peremptorily, in the seventh section of the charge, to assess interest as part of the damages, instead of leaving it with the jury to say whether or not interest should be so assessed.

6. Where the damage allowed by a jury exceeds the highest amount authorized by any testimony in the case, and a remitter filed does not equal such excess, the court errs in not granting a motion for a new trial complaining of the verdict as excessive.

7. The verdict of the jury is contrary to the evidence, because the evidence showed conclusively that defendant and his children were by plaintiff employed to and did gather the corn and cotton seized under the writ of sequestration, and that they received therefor the full value of such services, from which it followed that they were not damaged by reason of their being deprived by the plaintiff of the opportunity to gather same as defendant's own property.

*Brown & Pritchett*, for appellee.—From and after the foreclosure sale, June 4, 1895, appellee was, under the law of emblement, entitled to access to and egress from the land, with the right to cultivate the crops to maturity, and to harvest and remove the same, provided he did so within . the current year, as away-going crops; and the purchaser at the foreclosure sale acquired no interest whatever in the crops by such purchase; but the title thereto remained wholly in Leath. Willis v. Moore, 59 Texas, 628; Trust Co. v. Gill, 8 Texas Civ. App., 358; Gray v. Worst, 31 S. W. Rep. (Mo.), 585; Cassilly v. Rhodes, 12 Ohio, 88; 12 Am. and Eng. Encyc. of Law, 708, et seq., 754; 2 Blacks. Com., 145; Tied. Real Prop., secs. 8, 70, 71.

COLLARD, ASSOCIATE JUSTICE.—In our opinion, the lower court did not err in overruling the special exceptions of plaintiff (appellant) to that part of the amended answer setting up the right of defendant to the crops on the seventy-five acres.

The mortgagor Lock had leased the premises to Leath, the defendant, for the year 1895, and had received the rent before the foreclosure sale under the Lock deed of trust, of date June 4, 1895. The lessee had, under his lease, cultivated the land, and at the time of the sale the crop of cotton and corn was maturing and some of it matured. The lease severed the right to the rents from the realty, and the sale of the land under the deed of trust did not carry the title to the rents or the crop on the premises standing at the date of the sale, whether mature or not; the lessee had the right of ingress and egress for the purpose of gathering and preparing the crops for market or use. This is no longer an open question in this State. Willis v. Moore, 59 Texas, 629; Trust Co. v. Gill, 8 Texas Civ. App., 358; Lombardi v. Shero, 37 S. W. Rep., 613.

The fact that the tenant had notice of the mortgage by its record is immaterial. It is the right of the mortgagor, before foreclosure, to sever the rents from the reversion. In this case it was done by granting the lease.

In the case last above cited, the court at first decided that the purchaser at the foreclosure sale having acquired title to the land, thereby took title to the unmatured crops. On motion for a rehearing, however, upon the authority of the case of Willis v. Moore, the court granted a new trial and affirmed the judgment of the lower court, holding the doctrine of the right of severance as above stated.

We agree with the court below, that defendant was not bound to hire his children out in order to make up the loss of their time in gathering the crops, which was interfered with by the plaintiff's writ of sequestration. We believe, however, the defendant himself would be bound to seek other employment, and use reasonable diligence to secure it, to prevent damage to plaintiff by his loss of time.

We do not believe that defendant was entitled to recover under the proof for the loss of time of his children in gathering the crop, at least that part of it that was gathered, and the verdict was excessive upon this issue. Plaintiff paid defendant for the picking of cotton by the children; the jury awarded defendant the value of the cotton as lint cotton. This value would include the cost of picking, and hold plaintiff to pay for it twice. The jury also allowed defendant an item, "9 days' work, children picking cotton at $4, $36." The verdict then allows plaintiff a credit of $30.20 for picking and hauling the cotton to the gin. The error in the verdict is evident. Defendant was paid twice for the picking of the cotton. We can not see how the defendant was damaged by the loss of the time of his children in picking the cotton, at least the cotton that was picked, because he testifies that the plaintiff's agent paid him for that work. He would be allowed only for loss of time it would have taken them to pick the cotton that was wasted by seizure under the writ of sequestration. We believe the verdict is clearly excessive in the item mentioned and in allowing defendant $6 for gathering the corn. Defendant was paid for gathering the corn, a part of it, 210 bushels, in this way: The corn was worth 20 cents per bushel. He purchased the 210 bushels

of corn from plaintiff at 15 cents per bushel, plaintiff allowing him 5 cents per bushel for gathering it, making up the value, 20 cents per bushel. The jury allowed defendant 20 cents per bushel for the 300 bushels gathered, and the same price for the 25 bushels wasted. There is evidently error in the verdict awarding defendant 20 cents per bushel for the corn. He can not recover damages for more than he paid for the 300 bushels of corn. Field v. Muenster, 11 Texas Civ. App., 341; Muenster v. Fields, 89 Texas, 102.

The amounts so improperly awarded by the jury would affect the verdict as to interest. The verdict was excessive in the particulars mentioned. Defendant entered a remitter of $13.97, but clearly this is not sufficient to cover the excess in the verdict. The court should have granted a new trial, because of excessive verdict.

Because of the errors pointed out, the judgment of the lower court is reversed and the cause remanded.

*Reversed and remanded.*

[December 22, 1897, on the filing by appellee of a remittitur of the sum of $43.13, and by consent of parties made with a view of securing a final disposition of the case, the judgment was reformed and affirmed in favor of appellee for $165.41, and thereupon, in view of an intended application by appellant for writ of error, the court made the additional findings of fact hereafter given. The application was made and writ of error was refused.]

COLLARD, ASSOCIATE JUSTICE.—Upon request of appellant, we file the following conclusions of fact in this case, to wit:

*Conclusions of Fact.*—1. It was agreed by the parties to the suit, that on and long prior to the 1st day of March, 1893, the land sued for by plaintiff, the appellant, was owned by W. W. Lock by title in fee simple.

2. March 1, 1893, W. W. Lock and his wife, Laura A. Lock, executed a deed of trust to R. L. Brown, trustee, conveying, with other lands, the land in suit to the trustee to secure a note of $6500 and interest and attorney's fees.

On the 16th of February, 1895, the Scottish-American Mortgage Company, Limited, sued in the District Court of Travis County on the claim secured by the deed of trust, and to foreclose lien on the land now in suit, in which suit the court rendered judgment for the plaintiff for the debt of $8273.92 against W. W. Lock and other defendants, and foreclosed the lien as prayed for, ordering sale of the land, upon which order of sale, issued May 7, 1896 (5 ?), addressed to the proper officer of Hays County, requiring sale of the land, which was returned by the officer, showing levy on the land, advertisement of the sale, and sale in regular order on the first Tuesday in June, 1895, to R. L. Brown, the plaintiff in this suit, for $4000. The sheriff selling the property made and executed deed to R. L. Brown, June 4, 1895, to the land, pursuant to the sale, which was duly acknowledged and recorded in Hays County, June 17,

1895. The order of sale ordered the officer executing the same to put the purchaser in possession.

The defendant in the suit, appellee, rented the farm on the land, seventy-five acres, from W. W. Lock, for the years 1891, 1892, 1893, 1894, and 1895, but did not rent the rest of the survey. In 1894, September 20th it was, he rented the seventy-five acres from Lock for the year 1895 at $4 per acre, and on that day paid him the rent. He planted and cultivated the land, fifty acres in cotton and twenty-two and a half acres in corn, and about two acres in cane and half an acre in potatoes and garden. On May 8, 1895, the corn and cotton were up, hoed, and plowed out; on June 4, 1895, the corn was in full silk and the cotton blooming, and the cotton and corn grew to maturity and the tenant was gathering the same when it was levied on under the writ of sequestration sued out by the plaintiff. The levy was made October 2, 1895, by J. P. Hall, deputy sheriff. Previous to the levy, Leath had gathered seven bales of cotton and about sixty-five bushels of corn. After the levy, the sheriff's deputy took possession of the cotton and corn, and no more was gathered until the 21st or 22d of the same month. On one of these days Leath's children began gathering the cotton, and Leath the corn. They were employed to do so by Tom Anderson, agent of R. L. Brown, who had in the meantime replevied the crop. After this the children gathered three bales of cotton of the crop levied on, weighing respectively 490, 534, and 533 pounds, out of which came 3166 pounds of seed, which were worth $9 per ton at the time of seizure. About twenty-five bushels of corn were wasted during the time it was levied on, and when Leath began gathering it again it had blown down and rotted on the ground. About 800 to 850 pounds of cotton also blowed out and wasted during that time, and was worth in the fields $1.75 per hundred pounds; the corn was worth 20 cents per bushel. Anderson, agent for plaintiff Brown, paid Leath at the rate of 50 cents per one hundred pounds for picking the three bales of cotton and $1 per bale for hauling it to the gin; of the 300 bushels of corn so gathered, Leath turned over ninety bushels to Anderson, who sold it at Kyle to Michaelis; the remaining 210 bushels he sold to plaintiff at 20 cents a bushel; that is, Leath paid him 15 cents per bushel for it standing in the field, and plaintiff allowed him 5 cents a bushel for gathering it.

By reason of the levy, Leath and his children lost twenty or twenty-one days. It would have taken the children nine days to gather the cotton, and Leath could have gathered the corn in twelve days. During this nine days, Leath testified, the services of Leath and children would have been worth $5 per day, and for the three additional days Leath's time would have been worth $1 per day. By reason of the levy on the crop, his children (minors) were deprived of an opportunity to labor about the gathering of the crop, except as stated.

During the time from June 4, 1895, until Leath moved away, he never denied plaintiff's right to enter upon any of the land. Leath was claiming it for the purpose of gathering his corn and cotton and no further.

He had rented none but the cultivated land on the place, about seventy-five acres. The rest was in pasture, over which he exercised no control. It was controlled by Lock. Leath's renting was from year to year. He rented in this way from 1891 to November 15, 1895.

When the levy was made, Leath was forbidden by the sheriff to gather any more of the crop, and because of that he and his children were deprived of employment, as stated, and remained without employment until the 21st or 22d of October, 1895, at which time they were employed by plaintiff to gather the crop as stated. After the levy, he made no effort to secure employment of the same character for his minor children, as he was unwilling to put his children out to work two miles from home with negroes and Mexicans. He made no effort to secure employment for himself, and could have secured none, unless it was to have gathered a little corn.

The picking of the three bales of cotton came to $26 or $27, which plaintiff's agent paid him, and he also paid him $1 per bale for hauling the cotton, and this is the same cotton for which he claims damages for preventing his children from gathering during the time from October 2 until they began picking again. Plaintiff also paid Leath $1 per day while he gathered ninety bushels of corn. A field hand was worth $1 a day boarding himself, and 75 cents with board. The day before the levy, Leath had hired a hand to help him gather the corn at 75 cents a day, and both could have gathered the corn in six days, and if the levy had not been made he would have worked only six days in gathering the corn.

The corn he bought of plaintiff only cost him 15 cents per bushel, he gathering it. He moved off the premises on the 15th of November, 1895, and after that occupied no part of the premises sued for. Up to that time he had used the house, barn, lots, well, cane patch, potato patch, and garden on the land.

At the time of the levy his oldest boy was 16 years old, the next, a girl, was 15 years old, then a boy 12 years of age, and a third boy 9 years old.

Cotton sold in 1895 first at 8½ cents, then at 8 cents per pound, and on October 2 may have been 8 to 8½ cents per pound.

The house, barn, and lots from June 4th to November 15th were reasonably worth $5 to $6 per month, and the cane and potato patch for the same time $7.50 to $8. Cotton picking was worth 50 cents, the pickers boarding themselves, and with board, only 35 cents per 100 pounds.

Plaintiff levied a sequestration on the property, as stated above, and after the seizure plaintiff replevied the property, giving a replevy bond with J. Gordon Brown and T. L. Lynch as sureties, approved October 17, 1895.

This statement is made with and to be taken in connection with our statement made in our former disposition of the case, which former statement is to be considered herewith.

Filed February 2, 1898.

Writ of error refused.