WACO ARTESIAN WATER COMPANY v. C. M. CAUBLE.

Decided October 26, 1898.

**1. Damages—Contract to Water Cattle—Injury by Breach.**

Injury to plaintiff's cattle by failure of defendant to furnish them water as he had agreed to do, is a natural result of the breach and such as might fairly be considered within the contemplation of the parties when the contract was made.

**2. Avoidance of Injury by Plaintiff—Care Required.**

The principle that plaintiff must avoid damages from defendant's breach of contract does not arbitrarily deny recovery for preventable damages, but requires of him the use of reasonable diligence, the care and means to be used under the circumstances being for the jury.

**3. Same—Contributory Negligence—Fact Case.**

Plaintiff, on the failure of defendant water company to furnish water for his cattle according to contract, in their feeding pens, could have supplied himself quickly and at small expense by connection with the mains of another company; but, ignorant of the nearness of such mains, built chutes from the pens to give the cattle access to a river, by using the inferior water of which they were damaged. Held, that it was a question of fact whether or not he was negligent in so doing.

**4. Same—Charge—Duty of Inquiry.**

A charge holding plaintiff negligent for failing to resort to the other water company for supply if by inquiry he could have ascertained the feasibility of so doing, was improper in the absence of his knowledge of facts suggesting such inquiry.

**5. Charge—Request—Ordinary Care—Agent.·**

A charge which tested the care required of plaintiff by the circumstances surrounding him can not be complained of for omitting to include the circumstances

surrounding his agent managing the business, in the absence of a requested instruction supplying the omission.

**6. Charge.**

All parts of a charge are to be considered in determining whether there is error in any portion.

**7. Breach of Contract—Damages—Proximate and Remote.**

Allegations of damages by injury to cattle, etc., from breach of contract to furnish water for feeding pens, held, on demurrer, to be within contemplation of the contracting parties and a proximate result of breach.

ERROR from McLennan.  Tried below before Hon. SAM. R. SCOTT.

*A. C. Prendergast,* for plaintiff in error.

COLLARD, ASSOCIATE JUSTICE.—The plaintiff in error makes a correct statement of this case, as follows:

"On September 1, 1896, C. M. Cauble filed this suit against William B. Hord for $2124.30, damages to 262 head of his cattle, alleging that Hord was engaged in supplying water for pay to persons residing in Waco and McLennan County, and that his feeding pens were supplied with pipes, troughs, etc., and connected with Hord's mains. That he placed 262 head of cattle in said pens in Waco, to feed and fatten them for market, and about February 1, 1896, made a contract with Hord to furnish water for said cattle at four cents per head per month until they were fattened, say till July 1, 1896. That Hord knew what the water was to be used for, and the damage which would result from failure to furnish same. That he complied with and was able and willing to comply with his contract, and Hord complied with the contract until May 19, 1896, when he, without notice to him, cut the water off, and kept it cut off until the evening of May 22, 1896, and failed and refused to furnish water for said time, and thereby he was left wholly without water for his cattle.

"That said pens were near the Brazos River, and he thereupon built fences into the river, and in this way had access to the river water for his cattle. That the water furnished by Hord was artesian, and the river water was brackish and inferior thereto. His cattle were thriving and fattening and on full feed, and had become habituated to the artesian, and would not drink the river water until nearly famished, and then would drink irregularly and too freely thereof.

"That there was no other place or means to water said cattle so as to keep them alive, except to water them at the Brazos River on said river water.

"That by reason of said cattle being forced on a change of water, they were thrown off their feed, became sick and affected with scours, lost flesh, and it took a month longer feeding to get them back in their condition. The expense of feeding was $50 per day, making $900 damages in feed. Cost of time, material, and labor to fence to Brazos River, $100.

Loss of flesh on 109 head, $168.15. Decrease in market price on them, $168.15; loss of flesh on the other 153 head, $394; decrease in market price, $394; total damage, $2124.30, for which amount he prays judgment with 6 per cent interest.

"On October 26, 1897, Cauble amended, making Waco Artesian Water Company, a corporation, defendant, and alleged that Hord sold the system of waterworks in Waco to it, and it assumed payment of all damage Hord had caused him, and prayed judgment against it.

"On November 15, 1897, said water company answered: 1. General denial. 2. Special exception to each item of damage, because the same is too remote and speculative. 3. Special exception to the item of $50 per day, aggregating $900, for feeding the cattle for one month, because such item is too remote and speculative, and is not and can not be plaintiff's measure of damages against it. 4. Special exception to the item of $100 for time, material, and labor for building a fence to the Brazos River to let the cattle water there, because such damage can not be set up against it, and it is not liable therefor. 5. Special exception to items $168.15 for loss of flesh, etc., because here would be a double recovery, and such damage is too remote and uncertain and speculative. 6. Special exception to the $394 items for the same reasons as the $168.15 items. 7. General denial. 8. Special answer that about May 19, 1896, its boilers, used and operated in pumping its water, became in a dangerous condition and broken down, and as soon as this was discovered, it and Hord notified Cauble and informed him it would be impossible to furnish him any more water, and gave this notice in time for him to have made other arrangements where he could have supplied his cattle with the same kind of water they were furnishing him, and if his cattle were injured by drinking the Brazos River water, and if any damage resulted to him, he was guilty of contributory negligence in so watering them, and defendant is not liable therefor.

"That as soon as it could repair said boilers, which was done in a very few days, it furnished him water free during all the balance of the time to fatten his cattle.

"On November 17, 1897, the court sustained the water company's special exceptions, and gave Cauble leave to file a trial amendment, which he did at once, and pleaded that said 262 head of cattle 'by reason of the breach of said contract, and failing and refusing to furnish plaintiff water, were damaged in the sum of $3 per head; that is to say, at the time said water was shut off, said cattle were worth the average sum of $32 per head, and by reason of the damage caused by said breach, they were lessened in value $3 per head.'

"The water company renewed and again presented all its exceptions to the pleadings as amended. The court overruled all of them, to which it excepted.

"Hord never having been served, the suit was dismissed as to him, and tried before a jury, and on their verdict judgment rendered for Cauble for $680 and costs. The water company filed a motion for a new

trial, which was denied. It sued out a writ of error and made supersedeas bond."

We find the facts as follows: The contract as alleged was substantially proved, and that Hord had sold the water plant to said water company, and in the purchase it assumed all liability Hord incurred, and if Hord was liable to him, then said water company was so liable. That on May 18, 1896, Cauble had 262 head of cattle in his pens in Waco, fattening them for market, and said water company (or Hord) was furnishing water for them under said contract.

Cauble did not personally stay in Waco and attend to these cattle, but stayed at his home in Hill County. He left his agent and manager, Mr. Stiff, at Waco, who stayed there and managed his cattle business and attended to the feeding and watering of these cattle, and attended to everything about them.

That on said date his cattle were on full feed, being fed on cotton seed meal and hulls, were doing well, and had become accustomed to the use of the artesian water furnished by said water company. That, after the cattle had been thus fed and watered, to deprive them of water for any considerable length of time, or change water on them, would cause them to have the scours, throw them off their feed, and injure and damage them. That about May 18, 1896, the water company's furnaces and boilers got out of fix and in a dangerous condition, and it thereupon stopped the pumping of water on elevated points in the city of Waco where these pens were, for about three days, and until it could make the necessary repairs, when it again pumped water into Cauble's pens, and thereafter furnished him water for the balance of the season he fed these cattle. That the water was thus cut off for three days.

. That the Bell Water Company furnished artesian water, the same water the other company was furnishing, to anybody who applied, but charged 6 cents per head per month, instead of 4 cents, as charged by the other company. That the connection could have been made with the Bell Water Company's mains within two hours and a half at any time. That for the next season, Cauble disconnected his pipes from the Artesian Water Company's mains, and made this connection with the Bell Water Company's mains, and that this was done within two and one-half hours time.

The proof showed that the Brazos River water was kind of brackish and different from the artesian water. Cauble also showed by several expert witnesses and by himself and his agent, Stiff, as experts, the damage to cattle of this kind, in their condition, by being deprived of water for the length of time that these were deprived of it, and that, being changed to a different character of water, such as was in this case, the injury would be from $3 to $4 per head in the market price of the cattle. On cross examination these witnesses showed that they based their calculations and estimate of the injury by the length of time that it would take to feed the cattle, and the daily expense thereof, which would be 12½ cents per day, and that the time would be about twenty days, and the jury

arriving at the amount of their verdict, estimated the injury at $2.50 per head for the 262 head, which would be 12½ cents per day for feed for twenty days, making $655, and they allowed Cauble $25 damage for the material, time, and labor building the fence from his pens into the Brazos River to water them. The evidence on these points is sufficient to show $655 and $25 as special damage, making the total of $680, which was the verdict of the jury.

Cauble's agent incurred $25 expense by fencing chute from the pens to the river, and the cattle were watered there for the time the company's machinery was being repaired.

The water failed to be furnished by the company about 4 o'clock p. m., May 18, 1896, and it was about 2 o'clock p. m., May 20, before the cattle could be got to the Brazos River. When the company's machinery broke down, it did not notify Cauble or his agent of the fact, and they knew nothing of it until the water failed, and then Cauble's agent went down to the plant to see about it, and was told that they could do nothing for him. He commenced at once to construct chutes to the river.

The Bell Water Company in Waco was established about eight years before the trial, and they have and then had a six-inch main on North Fifth Street in Waco, and had a water system pretty well all over Waco, and furnished to the public artesian water, the same that was furnished by defendant company. Cauble did afterwards connect his pipes with the Bell Water Company, and it required only about two or two and one-half hours making the connection. A ditch had to be cut about sixteen feet long, and a joint pipe put in to make the connection, while the cost of fencing to the river from plaintiff's pens was $25.

The testimony was conflicting on the point, but in view of the verdict, we find that neither plaintiff nor his agent *knew* that the Bell Water Company's main came up on North Fifth Street, where the connection could be made for the small cost above stated. But both Cauble, the plaintiff below, and his agent, Stiff, knew the Bell Water Company was furnishing artesian water to the public in Waco, and they so testified. Neither plaintiff nor his agent in charge of the cattle applied to the Bell Water Company to be supplied with water on failure of defendant to furnish it. The Bell Water Company charged 6 cents per head per month for water for cattle, and plaintiff is procuring water from that company now.

Defendant below has sued out a writ of error from the judgment rendered against him, and assigned errors.

*Opinion.*—Plaintiff in error in brief presents three assignments of error together, as follows:

"9. The court erred in refusing to give its special charge number 1 to the jury.

"14 The court erred in the eighth paragraph of its charge as to the measure of damages for which defendant was liable in this case.

"15. The court erred in not setting aside the verdict of the jury, be-

cause the same was excessive and does not find the correct measure of damages."

The contention under these assignments by propositions is that the court's charge did not give the correct measure of damages; that the requested (refused) charge did give the correct measure of damages in limiting them to the difference between the contract price of water from defendant (below), and what he would have had to pay the Bell Water Company or anyone else, and no more, thus limiting the damages to what was in contemplation of the parties. The requested charge was as follows:

"When a defendant fails or refuses to carry out his contract, the plaintiff can recover damages. But it was the duty of the plaintiff to use ordinary and reasonable care and means to prevent an injury and the consequences of it.

"It was the plaintiff's own fault if he failed to use reasonable efforts, care, and diligence to protect himself from injury and loss, and when he failed, if he did, so to do, he will not be permitted to say that the loss that might have been thus avoided was caused by the wrong of the defendant; for it is against the policy of the law, as well as principles of justice, to permit a party to reap any advantage from his own negligences, if so, or want of ordinary care, or from his own and the negligence or wrong of the defendant, if so.

"Therefore, if you believe from the evidence that the defendant made the contract as set up by plaintiff in his pleadings and defendant failed and refused to comply with such contract, it was plaintiff's duty to use the diligence and care a reasonably prudent and careful man would use under the circumstances to protect himself from damages, and if you believe from the evidence, had he done so, the damages claimed by him would not have resulted, then he can not recover such damages.

"Also, if you believe, under the circumstances and facts of this case in evidence before you, that the plaintiff could, by using such care and prudence, procure from the Bell Water Company or anyone else the same kind of water, within such time as to have prevented any damage to his cattle, then the measure of damages would be the difference between the contract price of the water he was getting from defendant and what he would have had to pay said Bell Water Company or anyone else, and no more."

The court's charge in full is as follows:

"1. This is a suit by the plaintiff against the defendant to recover damages for the alleged breach of a contract to furnish plaintiff water for his cattle, alleging his damages to be $886.

"2. Now, it is admitted by both plaintiff and defendant, by their testimony, that the plaintiff did, as alleged, have a contract with the defendant, by which the defendant was to furnish plaintiff with water for the cattle he was feeding at the time; and it is further admitted by the defendant that they failed to furnish the plaintiff with water for the period of three or four days, as alleged in plaintiff's petition.

"3. You are therefore charged that the only question remaining for your consideration is, was the plaintiff damaged thereby, and if so, in what amount? and in determining this issue you will be guided by the following rules:

"4. Upon the failure of the defendant to furnish plaintiff's cattle with water, it became the duty of plaintiff or his representative in charge of said cattle to use ordinary care and vigilance to provide said cattle with water, such as would not injure his said cattle.

"5. By ordinary 'care and vigilance' as above defined is meant such as would be exercised by a man, of ordinary prudence, situated under the same or similar circumstances as those surrounding the plaintiff at the time of the alleged injury.

"6. Therefore, if you find that the plaintiff or his representative in charge of said cattle did exercise that degree of care, as above defined, to provide his cattle with water such as above stated, and you further find that by the exercise of that degree of care, as above defined, the plaintiff could have procured such water as above stated for his cattle, and would have thereby avoided any damages resulting to said cattle by reason of not having water, then and in that event he would not be entitled to recover anything by way of damages to said cattle, and if you so find, you will find for the defendant upon that issue.

"7. But if you find that the plaintiff, when he found that his cattle were not being supplied with water by defendant, did exercise that degree of care and vigilance that a person of ordinary prudence would have exercised under the same or similar circumstances in providing said cattle with water, and that, notwithstanding such degree of care and vigilance upon the part of plaintiff or his representative in charge of said cattle (if any), said cattle were injured by reason of failure to get water, or by the change of water; then if you so find, the plaintiff would be entitled to recover, and if you so find, you will so say.

"8. Now, if you find for the plaintiff, in determining the amount of damages, you will take into consideration the actual and necessary costs of getting to the water used, also the difference (if any) in the reasonable market price of the cattle in question at the time they failed to get water from defendant, and the reasonable market price of the same cattle at the time they were again supplied with water by the defendant, and whatever the amount may be, so ascertained, the plaintiff would be entitled to recover, not to exceed $886.

"9. The burden rests upon the plaintiff to show by preponderance of testimony that he is entitled to recover, and unless he has done so you will find for the defendant.

"10. You are the exclusive judges of the facts proven, the credibility of the witnesses, and the weight to be given to their testimony."

We note that there was no testimony showing a rise or fall in cattle in the markets.

The rule as to measure of damages for breach of contract is generally the direct pecuniary loss resulting from the failure to perform, or such

damages as might fairly be considered to have been in contemplation of the parties at the time the agreement was entered into.

Injury to plaintiff's cattle by the failure of defendant to furnish water, as stipulated in the contract, is the natural result of the breach, and compensation for such injury is the measure of damages. The water company knew the purpose of the contract was to supply plaintiff's cattle with artesian water, and they should be required to pay for the direct injury to the cattle from failure to comply with the contract. De la Zerda v. Korn, 25 Texas Supp., 189; Sedg. on Dam., 112.

But for an intervening principle, defendant would be bound to pay for all injury that would have resulted from the breach of the contract, if plaintiff had done nothing to prevent the full consequences of the breach. That principle is that he was bound to use ordinary care to prevent such consequences, so far as he could, by reasonable effort and expense. Railway v. Anderson, 85 Texas, 88; Suth. on Dam., 148-152; Cooper v. City of Dallas, 83 Texas, 242; Railway v. Adams, 63 Texas, 207; Fowler v. Waller, 25 Texas, 702.

To save himself, the plaintiff constructed a fenceway to the river, so that his cattle could obtain water, and he would be entitled to compensation for the expense incurred in building the fence, if he used reasonable care, with the lights before him, in so supplying water for his cattle. What constitutes the care and means to be used under the circumstances is a question for the jury. Cooper v. Dallas, supra. He is not bound to do any particular thing, especially if he were not advised that he could do it at reasonable cost. Plaintiff in error insists that plaintiff below could only recover the difference in the price he was paying it for water under the contract and the price he could have obtained the same kind of water for from the Bell Water Company—that is, $5.24 for one month. This can not be determined so arbitrarily. It was for the jury to say whether plaintiff used reasonable care, under the circumstances. He would not be held bound to take water from the Bell Water Company under any and all circumstances. He did not know that the company was so near his connections as it was, nor, of course, what it would cost to make connection with its mains. He would be held to use the care and diligence that a man of ordinary prudence would have used under the same circumstances. He may not have done the very thing nor used the very means that should have been used, as developed by subsequent information, and yet he was not necessarily in fault. We pass on the points made by brief of plaintiff in error. If the court's charge contains other errors as to the measure of damages, they are not insisted on, and we are not required to discuss them.

Plaintiff in error asked a charge, the refusal of which is assigned as error, that "plaintiff can not rely on his ignorance and that of his agent, Stiff; if so, that they did not *know* the Bell Water Company had a water main on Fifth or any other street in Waco, with which he could have, in time to have prevented injury to his cattle, connected and procured

water, but it was his duty and that of his agent, Stiff, to have used such diligence and inquiry as a reasonably prudent man would under the circumstances to have ascertained the facts, and if by doing so he or his agent, Stiff, could and would have so ascertained the facts, then he can not recover."

This charge is not the correct rule of law, as applied to the case. Plaintiff was not bound to inquire as to the facts, unless he knew such facts as would put a prudent man upon inquiry. This was ignored in the charge asked and refused. Besides, if he were bound to inquire and failed to do so, he would not be precluded from any recovery whatever, as stated in the refused charge. There was error in the charge asked, and though it may have been correct in other particulars, the court was not bound to separate the good from the bad, and charge that which is not erroneous.

There was no error in the court's definition of "ordinary care." The court defined it as such "as would be exercised by a man of ordinary prudence, situated under the same or similar circumstances as those surrounding the plaintiff, at the time of the alleged injury."

Plaintiff in error contends that the charge is erroneous, because it applies to plaintiff only, and does not apply to his agent, Stiff. The omission should have been corrected by a special charge correct in itself. The same may be said of other similar omissions in the court's charge upon care.

It is insisted that the court erred in the charge in stating, "that the only remaining question for your consideration is, was the plaintiff damaged thereby; and if so, in what amount?" The whole charge should be read in connection, and if this is done it will be seen that all the material issues were submitted. We find, therefore, no error in the remark objected to.

Plaintiff's petition was not subject to exceptions of defendant not sustained by the court. The court sustained all exceptions that were well taken.

We find no reversible error in excluding certain testimony of parties by which defendant proposed certain facts, which would prove that plaintiff ought to have known that the Bell Water Company had a water system in Waco, and supplied customers with artesian water. Plaintiff and his agent, Stiff, admitted and testified that they knew the Bell Water Company furnished artesian water in Waco, and defendant's defense could not be strengthened by showing that they ought to have known the fact. That they ought to have known it was immaterial, when they testified that they did know it.

The knowledge of the fact that the Bell Water Company furnished artesian water, was not knowledge that it was so convenient to plaintiff as to require him to get water from that company at its prices. If defendant had submitted a distinct issue, by special charge, as to whether plaintiff had knowledge of such facts as would put a prudent person

upon inquiry as to convenience to him of the Bell Water Company, and its low prices, the court should have submitted that question, and he may have done so, upon the testimony of plaintiff himself and his agent, that they knew of the Bell waterworks system. There was no error in excluding the testimony.

We find no reversible error in the case, and the judgment of the lower court is affirmed.

*Affirmed.*