KINCANNON & GAINES v. INDEPENDENT COTTON OIL CO.   (No. 5718.)

(Court of Civil Appeals of Texas. Austin. March 21, 1917. On Motion for Rehearing, July 2 and Oct. 10, 1917.)

On Motion for Rehearing

1. DAMAGES ⊜62(4) — DUTY TO MINIMIZE DAMAGE.

It is the duty of the party complaining of breach of contract to minimize his damage as much as possible.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 128–131.]

2. SALES ⊜418(7)—DUTY TO MINIMIZE DAMAGE—INJURY TO PROPERTY.

If buyers, after discovering that stock meal purchased was unfit for feed, could, by reasonable effort, have secured other feed with which to fatten their cattle, it became their duty to do

---

⊜For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

so, and if they did not do so, but continued to use the poor feed, they could not recover for injury resulting thereafter.

[Ed. Note.—For other cases, see Sales, Cent. Dig. § 1188.]

3. SALES ⬥◯⬤418(7)—ACTION BY BUYER—MEASURE OF DAMAGES — DIFFERENCE BETWEEN CONTRACT AND MARKET PRICE.

Where buyers, after discovering that stock meal purchased was unfit for feed, could have secured other feed, their measure of damages would be the difference between contract price and the price at which they could have purchased the other feed.

[Ed. Note.—For other cases, see Sales, Cent. Dig. § 1188.]

4. DAMAGES ⬥◯⬤62(4)—DUTY TO MINIMIZE DAMAGE—REASONABLE CARE.

An injured person is only required to use reasonable exertion and expense in minimizing his damage, the question in such cases being whether his act was a reasonable one, considering all the circumstances of the case, and this is especially true where notice of the wrong or injury has been brought home to him.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 128–131.]

5. SALES ⬥◯⬤38(7) — BUYER'S RIGHT TO RELY ON SELLER'S REPRESENTATIONS.

If purchaser of stock feed believed it to be unfit for use, but did not actually know that it was in that condition, after calling the seller's attention to the matter, the buyer could rely on seller's representations that the feed was sound, and will be entitled to recover for the resulting injury to the cattle.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 74, 75.]

6. JUDGMENT ⬥◯⬤251(1) — CONFORMITY TO PLEADING.

A judgment in a buyer's action for damages could not allow recovery upon a phase of the case not pleaded.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. § 437.]

7. JUDGMENT ⬥◯⬤256(6) — CONFORMITY TO PROOF.

A judgment, in a buyer's action for damages, could not allow recovery for feed buyer could have purchased in place of unsound feed furnished by seller, which the evidence showed that buyer did not in fact purchase.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. § 452.]

8. SALES ⬥◯⬤418(7)—ACTION BY BUYER—DAMAGES CAUSED BY BUYER'S NEGLIGENCE.

In action by buyer of stock feed, which caused injury to cattle, injury resulting from buyer's act in allowing cattle to stand in muddy pens should be deducted from amount recoverable.

[Ed. Note.—For other cases, see Sales, Cent. Dig. § 1188.]

Appeal from District Court, McLennan County; Tom L. McCullough, Judge.

Action by Kincannon & Gaines against the Independent Cotton Oil Company. Judgment of $180 for plaintiff, and plaintiff appeals. Reversed, and judgment of $1,156.90 rendered for plaintiff. On motion for rehearing, motion granted, former opinion set aside, and cause remanded for new trial.

Davis & Cocke, of Waco, for appellants. Scott & Ross, of Waco, for appellee.

RICE, J. During the fall of 1913, appellees, who were conducting a cotton seed oil mill at Bruceville, Tex., entered into a contract with appellants whereby they agreed to furnish them a certain amount of hulls and prime cotton seed meal for the purpose of fattening 432 head of cattle for market. And this suit is brought by appellants against said Oil Company, claiming failure on their part to comply with said contract, alleging that they had furnished unsound and inferior cotton seed meal and hulls, whereby said cattle failed to put on as much flesh as they would have done had said contract been complied with, and sought recovery of damages alleged to have been occasioned by such failure. Appellees, after a general denial, replied that appellants had full knowledge of the quality of hulls and meal as furnished for the purpose of fattening said cattle, and before the contract was entered into appellants sampled the meal and fed it to their cattle with a view of determining whether or not it would be satisfactory; that, after the execution of the contract, appellants, with full knowledge of the quality of the meal and the effect it was having upon their cattle, voluntarily continued to use the same. Appellees further allege that if the meal and hulls were unsound or inferior, as claimed by appellants, that they could have procured other meal and hulls from other sources, whereby they could have lessened their damages, but failed to do so. They also plead that during the time the cattle were being fed there was an unusual spell of wet weather, and the lot in which the cattle were kept had become full of mud and water, and so continued for several weeks, and that if the cattle were damaged it resulted from such condition of the pens.

The case was submitted on special issues, in response to which the court rendered judgment in favor of appellants for the sum of $180, from which judgment this appeal is prosecuted.

While numerous errors have been assigned, it is only necessary, in our judgment, to discuss the sixteenth assignment, which complains of the failure of the court to render judgment in behalf of appellants for the sum of $1,156.90, which they claim was the loss sustained on the 432 head of cattle, at an average of 40 pounds per head, at the market price of $6.70 per hundred weight. The jury found that appellees had failed to furnish the quality of meal contracted for by them, and in consequence thereof the cattle weighed 40 pounds less at the time of marketing than they would have weighed had the contract been complied with. It is unquestionably true that appellants made out a prima facie case under this finding of the jury, and were entitled to recover for the loss sustained. See Houston Cotton Oil Co. v. Trammell, 72 S. W. 244–47; Houk v. Berg, 105 S. W. 1176; Knight & Co. v. Southern Pacific Co., 41 Tex. 406–413. Appellees, however, con-

tend that as the evidence shows and the jury found that appellants had knowledge of the inferior quality of the feed within 30 days after the cattle were placed in the pens, and voluntarily continued to use the same, that they were only entitled to recover the difference in the cost between the feed so furnished and what it would have taken to have obtained proper and requisite feed in lieu thereof.

We think this doctrine would not apply in the instant case, for the reason that it appears from the evidence that upon complaint to appellees as to the inferiority of the meal and hulls, that they represented the same to be sound and good and insisted upon the use of same by appellants; therefore appellants were justified in relying upon their warranty and continuing their use. But, even if we are mistaken in this, still we think the burden was upon appellees to show that appellants, at reasonable expense, could have procured other and sufficient feed upon which to fatten the cattle, and also to show the difference in price of the feed actually furnished and the cost of obtaining other good and satisfactory meal and hulls, and, the evidence and verdict failing to show this with sufficient definiteness, appellees cannot complain. Again, appellees claim to have furnished to the director of the Texas Agricultural Experiment Station a sample of the feed in question, which was analyzed by him, and found to be suitable for feed purposes; it is contended on their part that they were not liable in a suit for damages at the instance of appellants, basing their contention on articles 5894 to 5900 of title 92, vol. 4, of Vernon's Sayles' Revised Civil Statutes. Notwithstanding the provisions of these articles, appellees were responsible upon their warranty, and having sold the feed in question, warranting the meal to be sound and of prime quality, cannot now escape liability by reason of their compliance with the statute referred to; for which reason we overrule their cross-assignment complaining of this question.

As the court erred in failing to sustain the sixteenth assignment, it becomes our duty to reverse the case, and here render such judgment as the trial court should have rendered in behalf of appellants, to wit, for the sum of $1,156.80, this being the total amount of loss sustained on 431 head of cattle basing same at 40 pounds each at $6.71 per hundredweight, as found by the jury; and it is so ordered.

Reversed and rendered.

On Motion for Rehearing.

It is insisted in the motion for rehearing that we erred in adopting an improper measure of damages in rendering judgment in behalf of appellants, urging that the evidence showed and the jury found that the plaintiffs, within 30 days after they began to feed their cattle, discovered that the cotton seed meal furnished was unsound and was injuring the cattle, and notwithstanding this knowledge continued to use it, for which reason they were not entitled to recover.

[1] The law seems well settled that it is the duty of the party complaining to minimize his damage as much as possible.

[2, 3] If appellants, after discovering that the meal furnished was unfit for use, could, by reasonable effort, have secured other feed with which to fatten the cattle, it became their duty to do so, and the measure of damages in such case would be the difference between the contract price and the price at which they could have purchased the other feed, which in the present case was, as found by the jury, the sum of $180.

[4] It is said in 13 Cyc. p. 71, that:

"Where an injured party finds that a wrong has been perpetrated on him, he should use all reasonable means to arrest the loss. He cannot stand idly by and permit the loss to increase, and then hold the wrongdoer liable for the loss which he might have prevented. Waco Artesian Water Co. v. Cauble, 19 Tex. Civ. App. 417, 47 S. W. 538; Trinity R. R. Co. v. O'Brien, 18 Tex. Civ. App. 690, 46 S. W. 389; Brown v. Leath, 17 Tex. Civ. App. 262, 42 S. W. 655, 44 S. W. 42. It is only incumbent upon him, however, to use reasonable exertion and reasonable expense, and the question in such cases is always whether the act was a reasonable one, having regard to all the circumstances of the particular case."

Again, on page 75 of Cyc., it is said:

"One whose property is endangered or injured by the negligence of another must exercise reasonable care to protect it from further injury; and especially is this rule true where notice of the wrong or injury has been brought home to the party seeking to recover damages, and he has taken no steps to protect himself from further loss. The rule only requires a party to protect himself from the injurious consequences of the wrongful act by the exercise of ordinary effort and care and moderate expense; such rule has no application where the injury could only be prevented by extraordinary effort or cost."

See, also, H. & T. C. R. W. Co. v. Mitchell, 38 Tex. 85; Brandon v. Mfg. Co., 51 Tex. 128; Womack v. W. U. Tel. Co., 58 Tex. 182, 44 Am. Rep. 614; H. & T. C. v. Richards, 59 Tex. 375; T. M. Ry. Co. v. Julius Herbeck, 60 Tex. 602; Houston, E. & W. T. Ry. Co. v. Adams, 63 Tex. 207; Cooper v. City of Dallas, 83 Tex. 242, 18 S. W. 565, 29 Am. St. Rep. 645; Vogt v. Dorsey, 85 Tex. 90, 19 S. W. 1033; Carhart & Bro. v. Killough, 1 White & W. Civ. Cas. Ct. App. § 112; O'Neil v. Davis, 1 White & W. Civ. Cas. Ct. App. § 417; Stoker v. Wilson, 3 Willson, Civ. Cas. Ct. App. § 10; Mo. Pac. Ry. Co. v. Rushin, 3 Willson, Civ. Cas. Ct. App. § 318; Mo. Pac. Ry. Co. v. Scott, 2 Willson, Civ. Cas. Ct. App. § 325; R. Co. v. Cook, 2 Willson, Civ. Cas. Ct. App. § 661.

Appellants bought the cattle for the purpose of feeding them for market, which fact was known to appellees, and there was evidence on the part of appellants showing that appellees expressly warranted the feed purchased as being sound and suitable for feeding cattle for market; it therefore became

their duty under their warranty to furnish sound meal and hulls for the purpose mentioned. But notwithstanding such warranty, if the facts show that, after beginning to use such feed, appellants discovered that it was not sound, but unfit for use, and was injuring the cattle, and thereafter continued to feed same, whereby the cattle were damaged, they could not recover for any injury resulting after such discovery.

[5] If the jury should believe from the evidence that appellants did not actually know them to be unsound, but merely believed them to be so, and, after calling the attention of appellee to the condition of the meal and hulls, appellee assured them that they were sound, and insisted upon their continuing to use them, then if appellants relied upon such representations, and continued to use them, they, in our judgment, would be entitled to recover whatever injury the cattle suffered by reason thereof.

In this connection it would be well to observe that the evidence shows and the jury found that plaintiffs did not discover the unsound condition of the feed until about a month after they had been using it. Under this phase of the case, plaintiffs were entitled to recover whatever injury, if any, the cattle may have suffered from the use of such improper feed during said period. But no account seems to have been taken of this in the trial below.

[6, 7] The court below gave judgment for plaintiffs for the sum of $180, based upon the theory that appellants, after discovering that the feed was unfit for use, could have purchased suitable feed, such recovery being the difference between the contract price and the then prevailing market price for such feed. This was error for two reasons: First, because the petition did not seek to recover upon such phase of the case, and without which no recovery could be had (G. C. & S. F. Ry. Co. v. Cole, 4 Willson, Civ. Cas. Ct. App. § 97; Western Union Tel. Co. v. Lively, 4 Willson, Civ. Cas. Ct. App. § 192); and, second, the proof showed that appellants failed to purchase such other feed, and hence could not recover for something they did not in fact furnish.

[8] We were mistaken in our original opinion in holding that the evidence failed to show that the cattle suffered any loss from standing in wet and muddy pens, but, on the contrary, it appears from the evidence, and the jury found, that the cattle were damaged and injured on this account to the extent of $717.97. In view of another trial, if the proof is the same on this phase of the case, then the issue should be so framed as to take this matter into consideration, allowing proper deductions for such loss.

For the reasons indicated, appellants' motion for rehearing is granted, and our former opinion rendering judgment in behalf of appellants is set aside, and the cause remand-

ed for another trial not inconsistent with the views herein expressed.

Reversed and remanded.

### Opinion Correcting in Part Opinion on Motion for Rehearing.

We held in our opinion on motion for rehearing that plaintiffs could not recover the sum of $180, it being the difference between the contract price of the feed furnished and what other suitable feed could have been bought upon the market, on the ground, among other things, that plaintiffs did not purchase such other feed. After due consideration, we are inclined to believe that such statement was not sound, and therefore desire to retract it, which is accordingly done. However, we see no reason for any change of such opinion in other respects, and overrule appellee's second, as well as appellant's, motion for rehearing.

Motions overruled.　Opinion corrected in part.