### C. LOMBARDI V. ISAAC SHERO ET AL.

Delivered November 21, 1896.

#### Foreclosure of Mortgage Upon Land—Growing Crops—Severance.

A sale by the owner of land of crops growing thereon works a severance, so that the crops do not pass to the purchaser at a mortgage sale of the land, although the sale of the crops is subsequent to the maturity of the mortgage debt, and at the time of the mortgage sale the crops have not approached to maturity. Following Willis v. Moore, 59 Texas, 629.

APPEAL from Wichita. Tried below before Hon. GEO. E. MILLER.

*Ashby S. James*, for appellant.—Where the legal title to land remains in the vendor, and the deed reserves a lien to secure the deferred payments for the land, the vendee cannot sever the crops planted upon said land from the realty by an attempted transfer thereof as chattels. Butt v. Ellett, 86 U. S., 544; Crews v. Pendleton, 19 Am. Dec., 750; Combs v. Jordan, 22 Am. Dec., 478; Boyer v. Williams, 32 Am. Dec., 324; Foote v. Colvin, 3 Am. Dec., 478.

*A. A. Hughes, J. H. Barwise, Jr.*, and *Edgar Scurry*, for appellees.—Where crops are either growing or standing in the field, when produced by annual cultivation, they are no part of the realty, and they are liable to voluntary transfer as chattels, and the purchaser of such growing crop from a mortgagor before sale of the land is entitled to such crop as against a purchaser at a foreclosure sale of the mortgaged land, even though such crops be ungathered and are standing upon the ground at the time of such purchase under said foreclosure sale. Willis v. Moore, 59 Texas, 629.

HUNTER, ASSOCIATE JUSTICE.—C. Lombardi held a vendor's lien note against a tract of land in Wichita County which he had sold and conveyed to Rogers in 1889, the deed showing the vendor's lien as having been recorded 11th day of January, 1890. In 1892, at request of Lombardi, Rogers executed a deed of trust, in the nature of a mortgage, on the land in question, Ashby S. James being designated as the trustee, and the land conveyed to him by Rogers to secure the vendor's lien note aforesaid, still held by Lombardi. This deed of trust was

dated October 20, 1892, but was not recorded until 15th February, 1894. In August, 1893, Rogers sold the land to Isaac Shero, the said Shero, as part of the consideration, assuming to pay said vendor's lien note still due to Lombardi, and the time of payment was extended by agreement between Shero and Lombardi to January 1, 1894.

Both Rogers and Shero failed to pay the vendor's lien note to Lombardi, and at request of Lombardi Ashby S. James, as trustee under the power of sale contained in the deed of trust, on the 6th day of March, 1894, sold and conveyed the land to C. Lombardi, who on March 27, 1894, filed this suit in form of trespass to try title to recover possession of the land, at the same time suing out a writ of sequestration under which the land and growing crops thereon were seized by the sheriff, and defendants having failed to replevy same within the ten days allowed by law, the plaintiff on the 28th day of March, 1894, executed a replevy bond and took possession of land and crops. The replevy bond was executed and made payable to Isaac Shero and D. W. Cloud, who were the only defendants named in the original petition, the said Cloud being a hired man residing upon and having charge of the premises and crops at the time of the levy.

On the 30th of April, 1894, plaintiff Lombardi filed a supplemental petition making Charles Shero a party defendant to the suit, alleging that he was asserting claim to the growing crops on the land, but that his claim was void for fraud, etc.

Charles Shero answered that he was the owner of the crops, which consisted of 105 acres sowed in wheat and 40 acres in oats at the date of the levy of the writ of sequestration; that he had purchased the same from Isaac Shero in good faith and paid him therefor before the foreclosure sale; and that the said crops were of the value of $1100, and that by reason of the seizure and conversion he was damaged in the sum of $1500. He also sets up the replevy bond executed by C. Lombardi, as principal, and Wm. D. Cleveland and Charles Elsbury, as sureties, under which Lombardi obtained possession of the crops; and prays for judgment against the sureties on the bond for the value of the crops aforesaid.

The record discloses that on the 16th of January, 1894, Isaac Shero was owing his brother Charles Shero a balance on two years' work of $650, and that he sold said crops to his brother to satisfy that indebtedness, and Cloud was informed of the sale and transfer and directed to hold and take care of the crops for Charles Shero, which he agreed to do, and did until the sheriff seized them and dispossessed him on 27th March, 1894.

On the trial of the cause by the court, without a jury, judgment was rendered in favor of Charles Shero for $399.35 against C. Lombardi, as principal on the replevy bond, and also against Wm. D. Cleveland and Charles Elsbury as sureties thereon, that being the value of the crops, after deducting the costs of harvesting and threshing them, and Lombardi, as well as the said sureties, has appealed to this court, and among

others assign as error the rendering of judgment on the replevy bond against the sureties, because the bond was not payable to Charles Shero, and that he was not a party to the suit at the time the bond was executed.

This assignment is well taken, because the bond was not payable to Charles Shero, and he could not have the statutory judgment provided for in such cases, nor did he have any right of action thereon at common law for the same reason. He had a remedy against C. Lombardi for the tort in seizing and converting the property, in which case all persons aiding or assisting Lombardi in such seizure would be jointly and severally liable.

But one other question remains, and that is, whether the judgment against C. Lombardi, under the facts in this case, can be permitted to stand.

Conceding that Lombardi, by taking the mortgage to secure his note, elected to make his conveyance of title to the land absolute in Rogers, and to rely upon his mortgage lien for security to his note, then what are the rights of the parties? Lombardi had his mortgage lien upon the land, in the hands of Isaac Shero, for Isaac had knowledge of this lien as a vendor's lien, and promised to pay it. Isaac became by his purchase from Rogers the owner of the land, and whatever crops he planted on the land became a part of the land the moment they were planted, and the lien of Lombardi attached instantly to such crops, subject, however, to the right of the mortgagor or his tenants or purchasers to gather and remove the crops after they should become mature enough to sever from the soil, if they should arrive at that stage of maturity prior to the divestiture of title of the mortgagor by the foreclosure proceedings.

In this case the title to the land was divested out of Isaac Shero, the owner and mortgagor, and invested in C. Lombardi, by the sale and conveyance of the land made by Ashby S. James under the deed of trust on the 6th day of March, 1894, and the title to all crops then planted or standing and growing on said land, not on that day mature enough to be gathered or harvested, passed with the land to Lombardi, because the mortgage lien having attached to them the instant they were put in the ground, Isaac Shero had no more power to sell them clear of the mortgage than he had to sell the land clear of the mortgage, and when Charles bought the crops on the 16th of January, 1894, he bought them subject to the mortgage on the land, they then being a part of the land.

If the foreclosure sale by James had not been made until after these crops were mature enough to be severed from the soil, although not actually severed, then Charles would have a different case, as we are inclined to think; but there is no claim made by him in this case that they were mature on the 6th day of March, and hence we are clearly of opinion that these crops being immature, formed part of the freehold, and that the title thereof passed to Lombardi with the land. 2 Jones

on Mortgages (5th ed.), sec. 1658; Caldwell v. Alsop, 48 Kan., 571; 29 Pac. Rep., 1150; Richards v. Knight, 78 Iowa, 69, 42 N. W. Rep., 584; Hecht v. Dettman, 56 Iowa, 679, 7 N. W. Rep., 495, 10 N. W. Rep., 241.

We are therefore of opinion that the judgment in this case ought to be reversed, and that judgment be here rendered for C. Lombardi for the land, and that Charles Shero take nothing by reason of his cross-action, but that he pay all costs in both courts occasioned by him, and it is ordered accordingly.

ON MOTION FOR REHEARING.

HUNTER, ASSOCIATE JUSTICE.—This motion for rehearing must be granted, on account of error in our decision of the question involving the right of Charles Shero to recover from Lombardi for the value of the growing crops seized and converted by him under the sequestration proceedings in this case.

In the case of Willis v. Moore, 59 Texas, 629, which we overlooked, we find that our Supreme Court carefully and fully considered the question here involved, and there quote with approval the opinion in the case of Hogsett v. Ellis, 17 Mich., 363, as follows: "A mortgagor is entitled to sever in law or in fact the crops which stand upon his lands at any time prior to the destruction of his title by sale under the mortgage; this results from his ownership and consequent right to the use and profits of the land, and the mortgage is taken with knowledge of that fact."

The court also cites and quotes from the case of Metzgar & Crugg v. Hershey, 90 Pa. St., 218, as follows: "A purchaser of land at sheriff's sale is entitled to the growing grain thereon, which had not been severed before the sale. * * * The test is whether there has been a severance of the growing grain; if so, it does not pass to him who purchases the land subsequent to the severance; if not, it goes with the land."

Our Supreme Court then adds that, "All these cases" (cited in opinion) "recognize a sale by the owner or by judicial process, if made before the sale of the land, as a severance."

True, in the case of Willis v. Moore, supra, the foreclosure sale was not made until the 8th of September, and the court say that the crops— corn and cotton—were "nearly or quite mature;" yet from the reasoning of the court we conclude that the rule there established applies equally to this case, where the foreclosure sale was made March 6, and there is no contention that the crops—wheat and oats—were even approaching maturity.

While this conclusion seems rather at variance with, and leads us to ignore, the contract of the parties in the case at bar, fixing the maturity of the debt on January 1, 1894, and the consequent right of the mortgagee to then foreclose by sale and immediately take possession; yet we

consider that such is the settled law in this State, and we therefore do not hesitate to apply it.

We therefore sustain appellee's motion for a rehearing herein, and overrule all that part of our former opinion in conflict with the views herein expressed, and order that the judgment in this cause as rendered by the District Court be in all things affirmed.

*Affirmed.*

### ON APPELLANT'S MOTION FOR REHEARING.

HUNTER, Associate Justice.—In our opinion rendered on appellee's motion for rehearing, we considered only the legal question involving the right of a purchaser of the growing crops from the mortgagor prior to foreclosure sale as against the purchaser of the land at such sale, and thereupon reversed our original decision and affirmed the judgment of the District Court. It was not our intention, however, to modify our original decision herein reversing the judgment of the District Court rendered against W. D. Cleveland and Charles N. Elsbury on the replevy bond, but our purpose was to adhere to our decision in their favor.

We therefore correct our decision rendered on appellee's motion for rehearing, so as to affirm the judgment of the District Court as against C. Lombardi, and reverse and render judgment in favor of Cleveland and Elsbury, as decided in our original opinion herein.

Writ of error refused.