KREISLE v. WILSON.

(Court of Civil Appeals of Texas. San Antonio. May 22, 1912. On Motion for Rehearing, June 19, 1912.)

1. SALES (§ 411*)—GROWING CROPS—CONTRACT —ACTION FOR BREACH—PLEADING—LOCALITY OR IDENTITY OF LAND.
    Where, in an action for breach of a contract for the sale of a growing crop of hay, there was no issue presented by the petition which made the particular locality or identity of the land on which the hay was located a material matter, the petition was not defective for fail-

ure to give a description of the land sufficient to identify it.
    [Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 1161–1164; Dec. Dig. § 411.*]

2. FRAUDS, STATUTE OF (§ 72*)—SALES—GROWING CROPS—"INTEREST IN LAND."
    A sale of a growing crop of hay with leave to the buyer to enter and remove the crop is not a sale of an "interest in land" within the fourth section of the statute of frauds.
    [Ed. Note.—For other cases, see Frauds, Statute of, Cent. Dig. §§ 116–118; Dec. Dig. § 72.*
    For other definitions, see Words and Phrases, vol. 4, pp. 3692–3709; vol. 8, p. 7691.]

3. CROPS (§ 7*)—REAL OR PERSONAL PROPERTY —CONSTRUCTIVE SEVERANCE.
    A sale or mortgage of growing crops of itself operates as a constructive severance of the same from the soil, so as to make the crop personal property.
    [Ed. Note.—For other cases, see Crops, Dec. Dig. § 7.*]

4. HUSBAND AND WIFE (§ 257*)—COMMUNITY PROPERTY—CROPS—SALE BY HUSBAND.
    Since a crop of grass grown on a wife's land is severable by a sale thereof and constitutes personalty, such crop is community property subject to sale by the husband.
    [Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. §§ 904–908, 910; Dec. Dig. § 257.*]

5. HUSBAND AND WIFE (§ 146*)—LIABILITIES OF HUSBAND — OWNERSHIP OF PROPERTY SOLD.
    Where a husband sold grass from his wife's land, but failed to deliver the same, he was liable for breach of contract, regardless of his ownership or right to sell.
    [Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. §§ 556–560; Dec. Dig. § 146.*]

6. SPECIFIC PERFORMANCE (§ 13*)—IMPOSSIBILITY OF PERFORMANCE.
    Where it develops that the seller of personal property under an executory contract was not the owner and had no right to make the sale, there could be no specific performance, but the buyer's remedy was a recovery of damages for breach of contract.
    [Ed. Note.—For other cases, see Specific Performance, Cent. Dig. §§ 30–32; Dec. Dig. § 13.*]

7. JOINT ADVENTURES (§ 8*) — ACTIONS AGAINST THIRD PERSONS—PARTIES.
    Where two persons agree with one another to make a joint purchase of goods, but the contract is made in the name of one of them, the other is not a necessary party plaintiff in an action for breach of the contract.
    [Ed. Note.—For other cases, see Joint Adventures, Cent. Dig. § 9; Dec. Dig. § 8.*]

8. JUDGMENT (§ 679*)—CONCLUSIVENESS—PERSONS BOUND.
    Where two persons agree with one another to make a joint purchase of goods, but the contract is made in the name of one of them, a judgment in favor of the latter, in an action in which the other joint adventurer is not made a party plaintiff, is conclusive as to the rights of both.
    [Ed. Note.—For other cases, see Judgment, Cent. Dig. § 1200; Dec. Dig. § 679.*]

On Motion for Rehearing.

9. JOINT ADVENTURES (§ 8*)—BREACH OF CONTRACT—EXTENT OF RECOVERY BY ONE ADVENTURER.
    Where the plaintiff alone contracted to purchase certain growing grass from defendant,

which defendant afterwards refused to deliver, plaintiff was entitled to recover the entire loss sustained for breach of the contract, notwithstanding another was interested with him and would have been entitled to one-half the profits of the grass had it been obtained; the interest of the latter being an equitable one only between himself and plaintiff which did not constitute any part of the expense that would have been incurred in harvesting or marketing the hay.

[Ed. Note.—For other cases, see Joint Adventures, Cent. Dig. § 9; Dec. Dig. § 8.*]

Appeal from Victoria County Court; J. P. Pool, Judge.

Action by W. E. Wilson against L. G. Kreisle. Judgment for plaintiff, and defendant appeals. Affirmed.

Proctor, Vandenberge & Crain, of Victoria, for appellant. Ben. W. Fly, of Victoria, for appellee.

JAMES, C. J. This action was brought by Wilson, upon allegation of an oral contract for the sale to him by defendant, Kreisle, of the grass on 587 acres of land in Victoria county. Plaintiff's case was presented by the petition substantially as follows: That about July, 1911, defendant represented to plaintiff that he owned and controlled 587 acres of good sage grass, then mature and suitable for hay, about 11 miles east of the city of Victoria, and offered to sell said grass to plaintiff, and plaintiff then and there bought all of said grass from defendant, and at the same time they entered into an oral contract to the effect that plaintiff should have all the grass grown on the 587 acres during the haymaking season of 1911; and plaintiff agreed with defendant to pay him 50 cents per acre for the best grass, not to exceed 200 acres, and 25 cents per acre for the remainder, said sums payable to defendant when the grass was mowed and its quality determined. That, when plaintiff went to mow said grass about 10 days later, other persons, J. B. Wood and others, claiming a superior right to the grass, prevented him from doing so, and, upon his reporting the matter to defendant, the latter refused to protect him in his contract and informed him that defendant's wife had previously sold said grass to Wood and others. The action was brought against Kreisle to recover the net profits plaintiff would have realized in the market from said hay, alleged to be the sum of $1,000. Defendant pleaded general demurrer and denial. The case was tried by the judge, who overruled the demurrer and allowed plaintiff a recovery for $312.80.

The first and second assignments complain of the ruling on the demurrer. It is claimed: First, that the growing grass, the subject-matter of the oral contract, was realty, and hence the contract was within the statute of frauds, and contrary to article 624 of the Revised Statutes requiring written instruments for the conveyance of real estate;

and, second, that the petition was fatally defective in stating a cause of action in that it failed to give a description of the land sufficient to identify it.

[1] There is nothing of substance in the latter contention. There was no issue presented by the petition which made the particular locality or identity of the 587 acres a material matter, and it was unnecessary for the petition to describe or refer to it further than was done.

The Texas cases, cited by appellant as sustaining the first ground of the demurrer, are not in point. Burkitt v. Wynne, 132 S. W. 821, and Adams v. Hughes, 140 S. W. 1163, relate to the question of the sale of growing timber, with the right of 10 years and 15 years for cutting and removing same. These were held to involve conveyance of interests in the land. Railway v. Foster, 44 S. W. 199, did not involve a sale of growing timber or crops, but damages to land by the destruction of an orchard. The cases of Parsons v. Hunt, 98 Tex. 426, 84 S. W. 644, Brown v. Roland, 92 Tex. 54, 45 S. W. 795, and Railway v. Stockton, 15 Tex. Civ. App. 145, 38 S. W. 648, are, from their several natures, of no service in determining the question presented, which it appears had not been, in terms, passed upon by our courts.

The sale alleged in this petition was of a crop of grass about ready to be cut as marketable hay for the season, with right of the vendee to mow it during the season. The trial court applied the rule, which is recognized in many, if not most, of the states, that a sale of growing timber or other products which contemplates their immediate removal from the soil is not subject to the statute.

Mr. Brown, in his work on the Statute of Frauds, reviews the subject exhaustively, and in section 237 sums it up in the following conclusion: "Considering these vegetable products, however, as growing on the land, there is great conflict in the cases upon the question, whether a contract for the sale of them shall be regarded as a contract for the sale of an interest in land. But upon a careful examination the more approved and satisfactory rule seems to be that if sold specifically, and to be, by the terms of the contract, delivered separately and as chattels, such a contract of sale is not affected by the fourth section of the statute as amounting to a sale of any interest in the land; and that the rule is the same when the transaction is of this kind, whether the product sold be trees, grass, or any other spontaneous growth, or grain, vegetables or other crops raised by periodical cultivation."

Greenleaf's Ev. (15th Ed.) § 271, says upon this subject: "Where timber or other produce of the land, or any other thing annexed to the freehold, is specifically sold, wheth-

er it is to be severed by the vendor, or to be taken by the vendee under a special license to enter for that purpose, it is still in the contemplation of the parties evidently and substantially a sale of goods only and so is not within the statute."

These expressions of the rule are so well supported by decisions, although there is considerable conflict, and are so well founded upon reason, that we conclude they were properly recognized as announcing the correct doctrine. There is no reason why annual products of the soil, capable of being, and which are destined to be, marketed annually, should be treated as real estate for all purposes just because for the time being, and awaiting maturity and removal, they are attached to the soil.

In Willis v. Moore, 59 Tex. 637, 46 Am. Rep. 284, the Supreme Court quotes with approval from Freeman on Executions and Benjamin on Sales, as follows: "Crops, whether growing or standing in the field ready to be harvested, are, when produced by annual cultivation, no part of the realty. They are, therefore, liable to voluntary transfers as chattels." The court then states: "Such being the case, if there be nothing in the contract of the parties by which the land is conveyed, nor in the circumstances attending the sale, evidently the intention of the parties that crops nearly or quite matured should pass with land sold, it is difficult to see upon what principle it can be held that property strictly personal in character should pass by an instrument which upon its face purports only to convey land. The weight of authority, however, is to the effect that such crops will pass by the sale of the land, if they belong to the owner. * * * As, however, the crops are separate and distinct in their value from the land upon which they grow, the ownership of the one, even on mortgaged property, may be in one person and the title to the other in another."

[2] A sale or mortgage of growing crops, of itself, is a constructive severance of same from the soil. Willis v. Moore, 59 Tex. 639, 46 Am. Rep. 284; Lombardi v. Shero, 14 Tex. Civ. App. 594, 37 S. W. 613, 971. These expressions of our own courts appear to clearly recognize that growing annual crops are in their nature personalty, and therefore sales thereof are not within the statutes governing the sales of real property.

We therefore overrule the said assignments.

The third, fourth, and fifth assignments are dependent on the decision of the previous assignments, and they are accordingly overruled. Likewise the ninth assignment.

[3, 4] The sixth is that a new trial should have been granted because the undisputed evidence shows that the land in question and the grass thereon was the separate property of defendant's wife, and there is no allegation of that fact in the petition. This is overruled for two reasons: (1) If, as we have held, the crop of grass was salable as personalty and severable by a sale thereof, it would follow that the product would be community property and subject to be disposed of by the husband; and (2) it was immaterial whether or not defendant or another owned the soil or the grass, if he in fact undertook to bind himself by a contract to sell it.

By the seventh it is insisted that if ownership of the property by defendant was lacking, being the property of his wife, plaintiff's only remedy was by an action in tort based upon the wrongful act of defendant by his false profession of ownership, inducing plaintiff to enter into the contract.

According to our view, the annual crop of grass, in view of its being periodically grown, cut, and marketed, and destined for such use and disposition, was impressed with the character of personalty while growing, and was a part of the community property, and so was subject to the husband's disposition.

[5] But if this were not so, the fact that he bound himself by a contract for the sale of the crop would render him liable for damages for the breach thereof, whether such breach consisted of his inability to deliver the crop because he was not the owner of it, or for some other reason. In executory contracts of sale of property, where it turns out the vendor was not owner of the property, and therefore cannot convey, there can, of course, be no specific performance, as was held in the cases cited by appellant. Clifton v. Charles, 53 Tex. Civ. App. 448, 116 S. W. 120; Hahl v. West, 129 S. W. 876. The liability in such case is for the damages sustained on account of the breach, according to the measure which ordinarily applies, which, in the present case, was correctly held to be the loss of profits.

[6] The tenth assignment of error arises from the following testimony: Plaintiff testified: "I was jointly interested with Mr. Maddox, who also had his outfit working with me. We were partners in the matter, and Maddox would have been entitled to one-half of the profits on this grass. I made the trade with Kreisle myself. I bought the grass myself, but Maddox was to cut the grass jointly with me. At the time I went to see Kreisle the last time, Maddox asked me if Kreisle wanted any money on the trade and told me to offer him $80, which I did. This was Maddox's money." Maddox testified: "I was jointly interested with Mr. Wilson in this grass. My outfit was working with him, and I would have made one-half of the profits off of this grass, if we had been allowed to cut the same. When Wilson went to make the deal with Kreisle, I asked him if Kreisle wanted any money, and I told Wilson to offer him $80 on the deal." The proposition is that, under the above testimony, plaintiff was entitled to recover only half of the profits; that he could recover only the actual loss sustained by himself.

[7] The contract was made with Wilson alone. Persons interested with him in the contract were not necessary parties. 15 Ency. Plead. & Prac. p. 500 et seq.; Pom. Rights & Remedies, § 223; Cleveland v. Heidenheimer, 92 Tex. 108, 46 S. W. 30.

[8] Appellant states that this is not a question of necessary parties or proper parties, but whether or not a plaintiff in such a case can recover more than his own damage. Having the right to sue in his own name for the breach of the contract, and the other not being a necessary party, it follows that the judgment is conclusive of the rights of both, and hence the recovery should be for the whole of the damages.

The judgment is affirmed.

### On Motion for Rehearing.

[9] It is claimed in this motion that the ruling, that plaintiff was entitled to recover, on the contract, the entire damages for the breach thereof, measured by net profits which would have been realized therefrom had it not been breached by appellant, is in conflict with rulings of other Courts of Civil Appeals, in Lone Star Canal Co. v. Cannon, 141 S. W. 799; Raywood Rice Milling Co. v. Wells, 33 Tex. Civ. App. 545, 77 S. W. 253; and Dunlap v. Raywood Rice, etc., Co., 43 Tex. Civ. App. 269, 95 S. W. 43. The two cases last named did not involve the question. In the Cannon Case there was no question that Cannon was not entitled to entire damages arising from the breach of the contract, and the question for decision was what was to be deducted, as expenses in order to arrive at what would have been the net profits, had the contract of the Canal Company been performed. The contract was between Cannon and the Canal Company. The Canal Company contracted with Cannon to furnish him water which, together with the natural rainfall, would be sufficient to properly irrigate the rice to be grown on a tract of land owned by Dr. Hawthorne, for which water Cannon was to pay the Canal Company one-fifth of the rice raised by him on the land. It appears, also, that Cannon was under a separate contract to pay Dr. Hawthorne one-fifth of the crop raised as rental for the land. The Court of Civil Appeals at Galveston, in effect and properly, held that, in ascertaining the damages in the suit between Cannon and the Canal Company, the one-fifth of the value of the crop which Cannon would have had to yield to Dr. Hawthorne had to be deducted as part of the expense of raising the crop. This would clearly be so, the same as if Cannon had agreed to pay Hawthorne a money consideration for the rent.

We think there is no real conflict between the ruling in that case and our ruling in this. The interest which Maddox had was an equitable one in the contract between appellant and plaintiff. His interest was in no sense a part of the expenses that would have been incurred in harvesting and marketing the hay. That plaintiff was entitled to recover the entire damage resulting from the breach of the contract, we think, is sufficiently shown in the opinion we have delivered. In any event, the question we have was not presented in the Cannon Case.

The other grounds of this motion for rehearing are not sustained.

The motion for rehearing is overruled, also the motion to certify.