GRINER et al. v. TREVINO.   (No. 6105.)

(Court of Civil Appeals of Texas.   San Antonio.   Dec. 4, 1918.   Rehearing Denied Jan. 15, 1919.)

1. PLEADING ☜49—NATURE AND OBJECT OF SUIT—PRAYER.

If petition contained prayer for cancellation of instruments unaccompanied by prayer for general relief, such special prayer determines the nature and object of the suit.

2. PLEADING ☜49—NATURE AND OBJECT OF SUIT—PRAYER.

The cause of action depends upon the facts stated, rather than upon the specific relief prayed for, where there is a general prayer for relief.

3. CANCELLATION OF INSTRUMENTS ☜37(1, 6)—FRAUD—PETITION—SUFFICIENCY.

In suit praying, among other things, for cancellation of instruments with reference to cutting of guayule from land in Mexico, peti-

tion held to disclose that court had jurisdiction of persons of defendants, and that a fraud had been committed against plaintiff for which a remedy could be afforded by requiring defendants to reconvey to plaintiff.

4. JUDGMENT ☜252(5) — GENERAL PRAYER FOR RELIEF—JURISDICTION—LANDS IN FOREIGN COUNTRY.

Although court of forum would not have jurisdiction to cancel instruments as requested in special prayer, where petition stated facts showing jurisdiction of defendants, and that a fraud had been committed for which a remedy could be afforded by requiring defendants to reconvey, the court had jurisdiction to grant such relief under the general prayer.

5. PLEADING ☜104(1) — PLEA TO JURISDICTION—SCOPE.

In suit praying, among other things, for cancellation of instruments with reference to cutting of guayule from land in the Republic of Mexico, defendants' plea to jurisdiction held not to go to the jurisdiction of the court to inquire into the question of fraud, but to the power of the court to grant cancellation of instruments.

6. COURTS ☜18 — JURISDICTION — LANDS IN FOREIGN COUNTRY.

The courts have no power to cancel a deed for land in another state or a foreign country.

7. COURTS ☜18 — JURISDICTION — LANDS IN FOREIGN COUNTRY.

Instrument purporting to convey right of entry upon lands in Republic of Mexico for purpose of severing guayule from soil, etc., purported to give an interest in land in Mexico, and courts of Texas would have no jurisdiction to decree cancellation, either under laws of Texas or under Statutes of the State of Coahuila, Republic of Mexico, arts. 684, 1327 (book 3).

8. APPEAL AND ERROR ☜843(3)—REVIEW—QUESTIONS UNNECESSARY TO DECISION.

Assignments urging that evidence is insufficient to sustain that part of decree canceling instruments need not be considered in view of the holding that such portion of decree must be set aside for want of jurisdiction.

9. APPEAL AND ERROR ☜1175(7)—JUDGMENT WARRANTED ONLY UNDER ONE FINDING—REMAND.

Judgment being warranted only for fraud or upon some other equitable ground, the court on appeal will not render judgment, but will reverse and remand, where it is unable to determine whether court based judgment upon finding that power of attorney was insufficient or upon a finding of fraud.

10. TRIAL ☜392(3) — FINDINGS OF COURT — REQUEST IN WRITING.

Rev. St. 1911, art. 1989, providing that on trial by court, judge shall, at request of either party, state in writing his conclusions of law or fact, does not require that the request to the court be in writing.

Appeal from District Court, Bexar County; J. T. Sluder, Judge.

Action by J. G. Trevino against J. G. Griner, and others. Judgment for plaintiff, and defendants appeal. Affirmed in part and reversed and remanded in part.

Diedrich A. Meyer and Don A. Bliss, both of San Antonio, for appellants.

Chambers & Watson, of San Antonio, for appellee.

MOURSUND, J. J. G. Trevino, a citizen of the republic of Mexico, on April 3, 1917, sued J. G. Griner, Otto Graf, and Charles Perry, alleging that they were residents of Bexar county, Tex., the amended petition on which trial was had containing allegations to the effect that on or about December 18, 1915, said Griner, as attorney in fact or individually, without authority of law, entered into a contract with defendant Graf for the cutting and taking off, for 20 years, from certain land inherited by plaintiff from his father, situated in the republic of Mexico, of the shrub guayule, and that Graf transferred and assigned said "lease contract" to defendant Perry; that said contract was entered into without the knowledge or consent of plaintiff, and was without any consideration, and made by Griner and Graf and transferred to Perry for the purpose of defrauding plaintiff, and for the purpose of enabling defendants to sell the guayule and reap the benefits therefrom, and embezzle and misapply the same, and for the purpose of placing a cloud on plaintiff's title to said property, and damaging his credit in the United States; that said "lease" was made as a result of a conspiracy between defendants for the purpose of robbing plaintiff, and was made at San Antonio, Tex., and that part of said contract is performable in the United States of America; that none of the terms or conditions of said contract have been carried out by defendants, and at the time same was made Griner was acting without authority, as the power of attorney under which he purported to act had been canceled, and for the further reason that said power of attorney did not confer authority to "lease" any of said property; that said Griner acted adversely to the interests of plaintiff, and for his own use and benefit, all of which was well known to the defendants, who acquiesced in and agreed to the same; that the purported lease contract, of which a copy was attached to the petition, was filed for record in Maverick county, Tex., and by reason of such filing great injustice and damages had been done by defendants, and that the unsettled conditions in Mexico were such as to prevent plaintiff from securing any relief; that defendants had sold, and were selling, large amounts of guayule taken from plaintiff's land, the exact amount being unknown to plaintiff, but which he charged was worth $15,000; that in addition he had been damaged in the sum of $10,000

by the execution and recording of said contract. He prayed for judgment canceling and setting aside said contract, and for damages in the sum of $25,000, for costs of suit, and such special and general relief, in law or equity, as he might be entitled to.

The defendants interposed a plea to the jurisdiction of the court in so far as the suit involved an action to cancel the instrument executed by Griner and Graf, the contention being that such instrument on its face was a contract and lease of lands situated in the state of Coahuila, republic of Mexico. All of the defendants answered by general denial, and Perry pleaded that the rights of Graf by virtue of said instrument had been assigned to him for a valuable consideration on November 10, 1918, without knowledge or notice on his part of any vice in the transaction between Griner and Graf.

Plaintiff by supplemental petition denied the allegations contained in the answers.

The trial resulted in a judgment canceling the two instruments described in plaintiff's petition, and that plaintiff take nothing by his suit for damages. The defendants appealed.

[1] If the petition had contained the prayer for cancellation of the instruments, unaccompanied by a prayer for general relief, such special prayer would be regarded as evidencing the nature and object of the suit, and in this respect as giving character to it. City of Houston v. Emery's Sons, 76 Tex. 282, 13 S. W. 264.

[2] But the cause of action, under our system of pleading, depends upon the facts stated in the petition that are appropriate for a recovery, rather than upon the specific relief prayed for, where there is a general prayer for relief, which, of course, must be understood to have reference and applicability to the facts alleged, whether the specific relief as specially prayed be granted or not. Lee v. Boutwell, 44 Tex. 151.

[3, 4] Applying the above rules, which are taken from the cited cases, to this case, we find that the petition discloses that the court had jurisdiction of the persons of the defendants, and that a fraud had been committed against plaintiff for which a remedy could be afforded by requiring the defendants to reconvey to plaintiff by instruments sufficient under the laws of the state of Coahuila, republic of Mexico, all such titles or interest as they might be entitled to by virtue of the instruments described in plaintiff's petition. This being the case, the court, under the prayer for general relief, would be authorized to grant plaintiff relief by compelling such reconveyance. The jurisdiction of the court to grant such relief is recognized in the case of Holt v. Guerguin, 106 Tex. 185, 163 S. W. 10, and is fully discussed by Mr. Wharton in sections 288 and 289a of his work on Conflict of Laws (3d

Ed.). In the exercise of this jurisdiction the courts make no distinction between cases in which the parties are foreigners and those in which they are subjects. Wharton on Conflict of Laws (3d Ed.) § 705.

[5] It is apparent that appellants' so-called plea to the jurisdiction does not go to the jurisdiction of the court to inquire into the question of fraud, and, if it finds it to exist, grant relief by a decree requiring a reconveyance or release, but goes to the power of the court to grant the specific relief prayed for, namely, cancellation of the instruments. However, as the court not only overruled the plea to the jurisdiction, but proceeded to enter a judgment canceling the instruments, we are confronted with the question whether the court had jurisdiction to so decree; for, if it did not, the judgment must be set aside for error fundamental and apparent of record.

[6] The courts have no power to cancel a deed for land in another state or a foreign country. Holt v. Guerguin, supra. We must determine whether the same rule applies to the instrument referred to in the petition as a contract, and also as a lease, the provisions of which, briefly summarized, are as follows: Trevino sells to Graf the entire guayule and the regrowth thereof for 20 years on 50 leagues of land bequeathed to Trevino by his father, the description thereof as contained in the will being copied, said land situated in the state of Coahuila, republic of Mexico. Graf agrees to pay the sum of $5 per ton for such guayule, in American gold or its equivalent, and to be deposited to the order of Griner, as attorney in fact for Trevino, in some banking institution in the United States of America. Graf is given the right of ingress and egress; the right to use the waters and pasturage for animals during the life of the contract; the right to the use of "wood, timbers, or other material on the property necessary for the building, or the establishment of houses, factories, etc., thereon for machinery, employés," etc. All permanent improvements shall remain on the land, but with the distinct understanding that all machinery and movables can be taken off of said property upon the expiration of the contract. Full authority is granted to Graf to construct any and all things necessary for the carrying on of the business of manufacturing rubber from the guayule plant, and the cutting, pulling, and removing of such plant. Authority to assign or transfer the contract or sale over unto any individual or company that he may desire is also given. It was provided that "the time and duration of this contract for the cutting and taking off of the shrub known as guayule shall be 20 years from this date, and the payment thereon shall be made monthly, the same to be paid according to the books or statements made by said Graf, his assigns, or the company that he may represent, the weights to be taken at the factory or railroad station."

The guayule plant is a perennial shrub, which grows in desert countries, from which a rubber substance is extracted.

The Statutes of the State of Coahuila, Republic of Mexico, contain the following provisions:

"Article 684: Immovable properties are:

"I. Lands, buildings, iron ways and other constructions that cannot be transported.

"II. Plants and trees so long as they are attached to the land; and the fruits hanging on such trees and plants so long as they are not separated from them by crops or regular cuttings."

Article 1327 (Book 3):

"A real obligation or an obligation affecting realty affects the thing or matter that may be possessed by any one and against any one possessing the same."

Testimony was introduced in behalf of appellants to the effect that under the laws of said state of Coahuila every lease to a foreigner of real estate for a term exceeding 10 years will be regarded as a sale. However, as appellee introduced testimony to the effect that such provision had been repealed, we take it that the court was authorized to disregard the same in deciding the question of jurisdiction.

So far as the definition of immovable properties above quoted is concerned we see no difference, as to matters involved in this case, from the doctrine of the common law that trees, turf, or grass, the natural produce of the earth, constitute real estate. The record contains no evidence to show whether under the law of Coahuila leases are personalty, as at common law, or immovables, as by the Roman law; nor whether there can be made by contract such a severance, in contemplation of law, of trees and other natural products from the soil, as to constitute the sale thereof one of chattels instead of realty, as is the case under our laws. See Lodwick Lumber Co. v. Taylor, 100 Tex. 270, 98 S. W. 238, 123 Am. St. Rep. 803; Dunsmore v. Blount-Decker Lumber Co., 198 S. W. 603; Kreisle v. Wilson, 148 S. W. 1132; Davis v. Conn, 161 S. W. 39.

But for the purposes of this case we regard this as immaterial; for, even if our laws were the only ones to be considered, we believe the court was without jurisdiction to enter a decree canceling the instruments. Mr. Wharton in his work on Conflict of Laws (3d Ed.) § 287, says: "Leaseholds, though personal estate by the English law, are yet regarded by English courts as immovables in their international relations." In the case of Waterman v. Charlton, 102 Tex. 510, 120 S. W. 171, it is held that, although unlocated land certificates for land in this state are regarded as personal

property for various purposes, they are governed by our laws of descent and distribution. The court said:

"The title to its land is the very subject which every sovereignty maintains the exclusive right to control by its own laws. 'A sovereignty cannot safely permit the title to its land to be determined by a foreign power. Each state has its fundamental policy as to the tenure of land; a policy wrought up in its history, familiar to its population, incorporated with its institutions, suitable to its soil.' Wharton, Conflict of Laws, p. 636, § 278. This consideration of policy must necessarily govern the descent of the title to land certificates issued under the laws of Texas, since they constitute the foundation of the titles to a very large part of the lands in the state. This does not conflict with the decisions which hold that the certificates, for many purposes, are to be regarded as chattels. Those decisions apply the law of this, not that of another, state. The mere fact that, for some purposes of our own, we treat such evidences of right as chattels does not justify the application to them of the principle that the title to movables is controlled by the law of the domicile of the owner, when the effect would be to subject titles to land in this state to a foreign law. That principle is generally, but not universally, true. It is not allowed to have the effect just stated. In some jurisdictions mortgages upon, and some leasehold interests in, real estate are regarded by the local law as chattel interests, but that is not allowed to subject them to a foreign law of the owner's domicile. Wharton, p. 640, § 287, and cases cited."

In section 289a Mr. Wharton says:

"And, first, it may be premised that real property is subject to the exclusive jurisdiction of the courts of the state or country in which it is located. No other courts may properly exercise any jurisdiction over it, and this is as true of courts of equity as of courts of law. Therefore it is beyond the power of a court of one state or country to entertain a suit in rem in respect of land in another, or to render a decree, either in a suit in rem or a suit in personam, which shall, ex proprio vigore, affect the title to real property beyond its territorial jurisdiction. When, however, a case, otherwise properly cognizable in equity, is presented, a court of equity, having personal jurisdiction of the parties, may assume jurisdiction of the subject-matter, although land in another state or country may be affected, if it can grant effective relief by a decree acting solely upon the person whose title or interest in the land is to be affected. In other words, the court may, in a proper case for equitable interference, by virtue of its jurisdiction over such person, and its consequent power to enforce obedience to its decree in personam, compel him to do, with respect to land beyond its territorial jurisdiction, what it could not itself, and without his intervention, accomplish."

[7] The instrument under consideration in this case purports to convey to Graf a right of entry upon lands in Mexico for the purpose of severing guayule from the soil, and to use portions of the land for buildings and other improvements necessary in carrying on the manufacture of rubber. Whatever aspect the rights granted might have in a suit for breach of the contract or for money due thereunder, the fact remains that it purports to give an interest in land in Mexico—to confer dominion and enjoyment thereof—and we believe that our courts have no power to divest such rights by means of a decree canceling the instrument. In support of this conclusion we make the following additional citations: Wharton on Conflict of Laws (3d Ed.) §§ 285, 286, 287, 288, 289a, and notes 567½; Thomas v. Hukill, 131 Pa. 298, 18 Atl. 875; Pomeroy's Eq. Jurisprudence (3d Ed.) § 1318.

[8] The assignments 3, 4, and 5, which attack the decree in so far as it cancels "the instrument," urging that the evidence is not sufficient to sustain that part of the decree, present questions unnecessary to decide in view of the holding that such portion of the decree must be set aside for want of jurisdiction. However, if these assignments can be construed as raising the issue whether there is evidence sufficient to show plaintiff entitled to any relief, we hold that the evidence is sufficient to support findings that the instrument was executed pursuant to a scheme formed by Griner to share personally in the benefits thereby conveyed to Graf; that Graf was grantee for the benefit of himself and Griner, and thus participated in the fraud; and that Perry had notice of such facts as were sufficient to charge him with knowledge of the fraud.

[9] We are unable to determine whether the court based his judgment upon a finding that the power of attorney was insufficient to authorize the execution of the instrument in question or upon a finding that fraud was shown. Believing, as we do, that a judgment requiring reconveyances or releases could be based only upon proof of fraud, or some other ground of equity jurisdiction, it would not be proper for this court to render judgment; for in order to do so we would have to assume that the trial court based his judgment on a finding that fraud had been proven.

[10] In view of the reversal of that part of the judgment complained of by appellants, we will not discuss the question of the failure to file findings of fact and conclusions of law further than to say that, as we construe the statute (article 1989, R. S. 1911), it does not require that the request to the court shall be made in writing. Landa v. Heermann, 85 Tex. 1, 19 S. W. 885; Dennis v. Kendrick, 163 S. W. 693; Riggins v. Trickey, 46 Tex. Civ. App. 569, 102 S. W. 919. In the case of Wandry v. Williams, 103 Tex. 90, 124 S. W. 85, and in other cases, our Supreme Court has spoken of the statute as providing for filing of the request; but as it is held that no order granting it is required, it does not partake of the nature of

a motion, but is simply a request which may be preferred verbally or in writing.

The judgment is affirmed in so far as it relates to damages sued for, and is reversed in so far as it undertakes to cancel the instruments, and the cause remanded for a trial on the issues made by the pleading other than those relating only to damages.

Affirmed in part and reversed and remanded in part.