On June 30, 1916, Mary S. Taylor, a feme sole, was the owner in her own name and right of 163 acres of land situated in Johnson county. On that day she made, acknowledged, and delivered to T. P. Barry, trustee, for the use and benefit of Sanger Bros. a deed of trust covering said land, to secure the payment of certain indebtedness aggregating $4,687.25. The deed conveyed the land, for the purpose stated, together with all improvements thereon and thereafter to be placed thereon, and with all and singular the rights and appurtenances to same belonging to or in any wise appertaining or incident thereto. The conveyance was forthwith duly recorded upon the proper records of Johnson county. On December 1, 1916, Mary S. Taylor entered into a valid rental contract of the premises mentioned with Watters Sons for one-fourth of the Johnson grass, cotton, and cotton seed, after paying the expenses of ginning and baling and one-third of all other crops. Thereafter, on January 2, 1917, while she yet owned the premises, and while the said Watters Sons were in the use and occupation thereof, cultivating the land under their said rental contract, the said Mary S. Taylor duly assigned, for a valuable consideration, the rental contract to appellees to secure certain indebtedness for which they sue in this suit. Thereafter, on June 6, 1917, crops of corn, oats and Johnson grass were growing on said premises under the contract Watters Sons had made with Mary S. Taylor, when Sanger Bros. duly caused T. B. Barry to duly execute the trust vested in him by selling the 163 acres of land owned by Mary S. Taylor. Sanger Bros. purchased the land at the trustee sale, and at once entered into possession thereof, made new rental contract with Watters Sons upon terms the same as Watters Sons had made with Mary S. Taylor, and thereafter received from Watters Sons, and appropriated for their own use, the rents specified in the rental contract with Mary S. Taylor.
The circumstances stated gave rise to the present suit, which was instituted by appellees against Mary S. Taylor for the amounts due from her and against Watters Sons and Sanger Bros. for the value of the rents specified.
The case was tried upon an agreed statement of facts, and, judgment having been rendered in favor of plaintiffs, Sanger Bros. have appealed.
One of the appellants' material contentions *Page 515 
is presented by a proposition under the first and second assignments of error. The proposition reads as follows:
"A lease contract made by a mortgagor after the execution and record of a valid mortgage is subject and subordinate thereto. Foreclosure of said mortgage extinguishes said lease, and the purchaser at foreclosure sales takes the land free from the same, is entitled to immediate possession, and all the rights of user and beneficial enjoyment incident to ownership, and, as a consequence, to all crops unmatured and growing at the date of purchase."
The case of Willis v. Moore, 59 Tex. 628, 46 Am.Rep. 284, and cases following it, seem to be conclusive against appellants' proposition. The question in the case named is thus stated:
"The question for our decision then is, Is the purchaser of mortgaged lands, as against the mortgagor or any person claiming under him by a purchase of the crops, entitled to such crops as were standing ungathered upon the land at the time of his purchase?"
The question, after an elaborate discussion, was answered in the negative. The decision, which is opposed to the holding in England and to some of the other states, is based upon the proposition that in Texas the mortgagee of lands is but a lienholder, and not the owner or holder of the legal title, and that until foreclosure the mortgagor has full title, with right to dispose of the crops. It was particularly said that —
"A mortgagor is entitled to sever in law or fact the crops which stand upon his land at any time prior to the destruction of his title by sale under the mortgage; this results from his ownership and consequent right to the use and profits of the land, and the mortgage is taken with knowledge of that fact."
Appellants' counsel recognize the authority of the case of Willis v. Moore, supra, but insist that it is distinguishable from the case before us, in that there the crops at the time of the transfer or assignment thereof (which was in September) were matured and ready for severance from the soil, whereas in the case before us the transfer of the rental contract was in June, at a time when the crops, with the possible exception of the Johnson grass, were growing and unmatured, the contention being that until matured the crops were essentially part of the land, which necessarily passed to the purchaser at the trustee sale. But the case of Willis v. Moore was not so limited by the able judge who wrote the opinion, nor is the distinction suggested recognized in any of the cases called to our attention, which follow the case of Willis v. Moore. On the contrary, in the cases of McKinney v. Williams, 45 S.W. 335, and in Lombardi v. Shero, 14 Tex. Civ. App. 594, 37 S.W. 613, 971, and in Brown v. Leath, 17 Tex. Civ. App. 262, 42 S.W. 655, 44 S.W. 42, the distinction is repudiated. In those cases it was distincely held that a sale by the owner of land of crops growing thereon worked a severance, so that the crops did not pass to a purchaser at mortgage sale of the land, although the sale of the crops was subsequent to the maturity of the mortgage debt, and that at the time of the mortgage sale the crops had not approached maturity. Writs of error were refused in both of the cases last cited, which would seem to be now here controlling.
We should perhaps notice a further contention of appellants, predicated upon the following extract from the agreed statement of facts, viz.:
"That at the said time (June 6, 1917), out of the 65 acres of cotton, 60 acres had on it a very poor stand, and it was of doubtful propriety or expediency to let said land go without replanting; so that it was then and there mutually agreed by and between T. V. Watters Sons and the said Sanger Bros. that said 60 acres of land should be replowed, reprepared, and replanted in cotton, and the said 60 acres of land under such agreement was replanted in cotton after the 6th day of June, 1917."
Appellants insist that at all events Mary S. Taylor's assignment of rents to appellees did not operate so as to include the rent cotton raised upon the 60 acres of land replanted, it being shown that the rents therefrom and collected by Sanger Bros. amounted to $495.59. While appellants' counsel have forcibly presented a contrary view, we think we must hold that appellees, under the terms of the rental contract by Watters Sons and by virtue of the assignment from the owner under which they hold, are entitled to the rents upon the 60 acres of cotton planted at the instance of appellants after their purchase.
It is to be noted in the first place that there is no clear showing in the statement of facts (and from which we have quoted that part pertinent to the question now under consideration) that there was a real necessity to replant any of the cotton. The statement is merely that the 60 acres "had on it a very poor stand," and that the propriety or expediency of permitting the land to go without replanting was "doubtful." There is no showing that, had the 60 acres not been replanted, no cotton of material value would have matured, and we think the appellants and the tenant at their own peril assumed the responsibility, and must have the doubt resolved against them. But regardless of this suggestion, and assuming for the purpose of our conclusion that the replanting was necessary, we nevertheless think that appellees were entitled to the rents due upon the replanted land, which undoubtedly thereafter produced a crop. As we understand the rule in this *Page 516 
state to be, not only crops planted, but crops to be planted, and which are thereafter actually planted pursuant to a contract with the owner of the land, may be sold or mortgaged. That is to say, that if a tenant, under a valid contract with the owner of the soil, agrees to pay a crop rent and thereafter actually plants and cultivates the specified crop, the same may be sold or mortgaged even though at the time of the sale or mortgage the crop has not actually been planted. In such case the crop is considered as having a potential existence, and, having such potential existence, it may be assigned or mortgaged before the crop is actually planted, as well as thereafter while growing. See Richardson v. Washington et al., 88 Tex. 339, 31 S.W. 614; Dupree v. McClanahan, 1 White W. Civ.Cas.Ct.App. § 594 et seq.; Conley v. Nelin, 60 Tex. Civ. App. 395,128 S.W. 424; Barron v. San Angelo Nat. Bank, 138 S.W. 142.
It is undisputed that appellants had notice of the rental contract between Mary S. Taylor and Watters Sons and of the assignment thereof to appellees at the time of appellants' purchase under their trust deed. Hence we conclude that by such assignment appellees acquired the full right as against Watters Sons and appellants to the rents in question, and that the new rental contract entered into between Watters Sons and appellants was of no effect as against appellees, It is accordingly our judgment that appellants' assignments of error and all propositions thereunder should be overruled and the judgment affirmed.
 On Motion for Rehearing.
The counsel for appellants very earnestly insist that we were in error, at least, in holding that the appellees were entitled to recover the cotton replanted after the sale of the land to Sanger Bros. It is contended that our ruling leads to unreasonable results; that in accordance therewith an owner of land who had given a mortgage thereon might lawfully make a rental contract extending through a series of years and thereafter assign such contract, and thus deprive the mortgagee in a large measure of the fruits of his mortgage. Logically this may seem true, but as to this contention we deem it sufficient to say that the case before us presents no such condition. The lease by the landlord here was for but one year, and it will be time enough to determine the supposititious cases when they are presented upon the record. Doubtless, if such a case be presented, some rule of law or equity may be found to prevent injustice. At all events, if we are to be controlled by the cases cited in our original opinion, as we think we must, it seems clear that Mary S. Taylor, the owner of the mortgaged premises involved in this suit, had a clear right to make the rental contract she did with Watters Sons, and that, having such right, she as clearly could lawfully transfer it with all of its force to appellees. If so, the tenant was liable for the rents as he had contracted for, both as to the growing crops and as to all crops actually planted and maturing for the crop year, and no action on the part of Sanger Bros. or of the tenants could impair, to any extent, appellees' right as assignees of Mrs. Taylor.
In deference to a request on the part of able counsel who argued this case, we will also notice the further contention, not heretofore presented, that our ruling is violative of the Fourteenth Amendment of the Constitution of the United States, in that it amounts to taking of property without due course of law. We will not enter upon any extended discussion of the subject, but will merely say as to this that from an early date in this state, unlike as at common law, the mortgagee of lands is but a lienholder, the legal title yet remaining in the owner of the mortgaged premises, with an unimpaired right to lease and obtain the emblements in the way of growing crops. See Duty v. Graham, 12 Tex. 427,62 Am.Dec. 534; Willis v. Moore, 59 Tex. 628, 46 Am.Rep. 284, where the subject is fully discussed. This being true, we cannot see that Sanger Bros. have been deprived of any right for which they contracted. The rule of law referred to was in full force in this state at the time they took their liens upon Mrs. Taylor's premises, and the trust deed lien therefore was affected by the rule as fully as if it had been written in the trust deed. By a very familiar rule of construction, Sanger Bros. must be held to have known at the time they took their trust deed that Mrs. Taylor had the lawful right to make the rental contract as she did, and had the further right of assigning such contract to others.
Under such circumstances, we know of no decision of the United States courts which goes so far as to hold that such subsequent lease and assignment of Mrs. Taylor was a taking of appellants' property, or an impairment of their security within the meaning of the clause of the federal Constitution referred to. Indeed, we do not see that such subsequent rental contract and assignment in fact impaired appellants' security. The security was the land owned by Mrs. Taylor, and not the crops involved in this suit, and nothing in the evidence in this case even tends to show that the land at the time of its sale under the trustee process to appellants was not, in fact, of much greater value than the debt to secure which the trust deed had been given.
 We conclude the motion for rehearing should be overruled. *Page 517